1  Ashleigh A. Danker (Bar Number 138419)
   Email address: adanker@kayescholer.com
2  KAYE SCHOLER LLP
   1999 Avenue of the Stars, Suite 1700
3  Los Angeles, California 90067
   Telephone: (310) 788-1000
4  Facsimile: (310) 788-1200

5  Attorneys for Secured Creditor
   Montecito Bank & Trust

6

7                  UNITED STATES BANKRUPTCY COURT

8                  CENTRAL DISTRICT OF CALIFORNIA

9                  SAN FERNANDO VALLEY DIVISION

10

11 In re                              )  Case No. 1:11-bk-13715-MT
                                      )
12 CENTER COURT PARTNERS, LLC,        )  Chapter 11
                                      )
13 Debtor and Debtor-in-Possession    )
                                      )
14                                    )  **STATEMENT OF MONTECITO BANK &**
                                      )  **TRUST WITH RESPECT TO CASE**
15                                    )  **MANAGEMENT CONFERENCE;**
                                      )  **DECLARATION OF ASHLEIGH A.**
16                                    )  **DANKER IN SUPPORT THEREOF**
                                      )
17                                    )  Date: May 26, 2011
                                      )  Time: 9:30 a.m.
18                                    )  Place: Courtroom 302
                                      )        United States Bankruptcy Court
19                                    )        21041 Burbank Blvd.
                                      )        Woodland Hills, CA 91367
20 _____)

21

22

23

24

25

26

27

28

23306725.DOCX

**KAYE SCHOLER LLP**

**TO THE HONORABLE MAUREEN A. TIGHE, UNITED STATES BANKRUPTCY JUDGE, THE DEBTOR, AND OTHER PARTIES IN INTEREST:**

Montecito Bank & Trust (the "Bank") is the secured creditor with respect to the sole asset of debtor in possession Center Court (sic) Partners, LLC[1] (the "Debtor"), a two-story medical use condominium building in Agoura Hills consisting of twenty-two (22) sellable or rentable units constructed in 2008 for use as medical offices (the "Property"). The Debtor is not operating properly as a chapter 11 debtor, including for the reasons described below, and is extremely unlikely to be able to satisfy the requirements of the Bankruptcy Code with respect to a single asset real estate ("SARE") debtor.

**THE DEBTOR IS VIOLATING THE BANKRUPTCY CODE**

The Debtor filed its petition on March 25, 2011 (the "Petition Date"). Attached hereto as **Exhibit B** is a copy of the Debtor's Monthly Operating Report for April 2011 (the "April MOR"). The April MOR (**Exh. B, bates p. 30**) identifies eight (8) payments made by the Debtor in April as follows, none of which were proper under the Bankruptcy Code:

1. 4/5/11 - City Lights Financial - $1,039 for postpetition reimbursement of the Debtor's filing fee. This appears to be an improper payment of a prepetition unsecured obligation. Moreover, the Debtor does not have authorization to use cash collateral. Accordingly, this payment may be an unauthorized use of cash collateral. The Debtor's counsel sent the Bank's counsel an email explaining this payment which was nonresponsive to the Bank's concern. A copy of the Debtor's email response dated May 16, 2011 (the "Response") is attached hereto as **Exhibit C.**

---

[1] According to the California Secretary of State's Office and the Bank's loan documents, the Debtor's name is correctly shown as "Centercourt Partners, LLC." A copy of the Debtor's Business Entity Detail as it appears on the Secretary's website is attached hereto as **Exhibit A.**

1

2.  4/6/11- Martin Gross - $2,000 for a postpetition retainer. Because of the small
amount, the Bank did not object to Mr. Gross's employment application, but notes
that payment of a postpetition retainer typically requires an explanation and
specific approval by the Court. The Response was nonresponsive to the Bank's
concern regarding the basis for a postpetition retainer. *See* **Exhibit C.**

3.  4/6/11 - Waste Management - $225.22 for trash disposal. It is impossible to tell
whether this payment was on account of a prepetition or postpetition debt. It may
be an unauthorized payment of a prepetition debt. Moreover, the Debtor <u>does not
have authorization to use cash collateral.</u> Accordingly, this payment may be an
unauthorized use of cash collateral. The Response was nonresponsive to the
Bank's concerns regarding this payment - including that the U.S. Trustee does not
have the authority to authorize payment of prepetition obligations or use of the
Bank's cash collateral. *See* **Exhibit C.**

4.  4/6/11 - So Cal Edison - $804.88 for electricity. It is impossible to tell whether
this payment was on account of a prepetition or postpetition debt. It may be an
unauthorized payment of a prepetition debt. Moreover, the Debtor <u>does not have
authorization to use cash collateral.</u> Accordingly, this payment may be an
unauthorized use of cash collateral. The Response was nonresponsive to the
Bank's concerns regarding this payment - including that the U.S. Trustee does not
have the authority to authorize payment of prepetition obligations or use of the
Bank's cash collateral. *See* **Exhibit C.**

5.  4/8/11 - Rocky Ortega - $4,087.50 for prepetition legal fees for counsel not
employed by the Debtor in the bankruptcy case. This appears to be an improper
payment of a prepetition unsecured obligation. Moreover, the Debtor <u>does not
have authorization to use cash collateral.</u> Accordingly, this payment may be an
unauthorized use of cash collateral. The Response was nonresponsive to the
Bank's concern regarding improper payment of a prepetition obligation. *See*
**Exhibit C.**

23306725.DOCX

6. 4/8/11 - JRM Equities - $2,550 for property management and landscape maintenance. It is impossible to tell whether this payment was on account of a prepetition or postpetition debt. It may be an unauthorized payment of a prepetition debt. Moreover, the Debtor <u>does not have authorization to use cash collateral.</u> Accordingly, this payment may be an unauthorized use of cash collateral. The Response was nonresponsive to the Bank's concerns regarding this payment - including that the U.S. Trustee does not have the authority to authorize payment of prepetition obligations or use of the Bank's cash collateral. *See* **Exhibit C.** Finally, the Bank believes that JRM Equities is owned by Jonathan R. Meyer, the son of the Debtor's principal, Roger Meyer. A monthly management fee of $2,550 for a project that has only two tenants generating approximately $10,046.01, which fee represents more than 20% of the rents, is clearly excessive, and not market.

7. 4/11/11 - American Janitor - $300 - for janitorial services. It is impossible to tell whether this payment was on account of a prepetition or postpetition debt. It may be an unauthorized payment of a prepetition debt. Moreover, the Debtor <u>does not have authorization to use cash collateral.</u> Accordingly, this payment may be an unauthorized use of cash collateral. The Response was nonresponsive to the Bank's concerns regarding this payment - including that the U.S. Trustee does not have the authority to authorize payment of prepetition obligations or use of the Bank's cash collateral. *See* **Exhibit C.**

8. 4/14/11- American Express - for postpetition printing. The Debtor <u>does not have authorization to use cash collateral.</u> Accordingly, this payment may be an unauthorized use of cash collateral. The Response was nonresponsive to the Bank's concerns regarding this payment. *See* **Exhibit C.**

According to the petition and the April MOR, the Debtor had cash of approximately $16,144 in its primary bank account. As stated by the Debtor's principal, Roger Meyer, at the Section 341(a) meeting of creditors, at least some of this money represents the Debtor's rents from its two tenants (approximately $10,046.01 per month total), and is the Bank's cash

3

collateral.[2]  The Debtor <u>does not have authorization to use the Bank's cash collateral</u> and, despite the Bank's request, has made <u>no effort to segregate the Bank's cash collateral since the Petition Date</u>.  Instead, the Debtor <u>is improperly paying prepetition unsecured creditors</u> and, possibly, <u>using the Bank's cash collateral without the consent of the Bank or Court approval</u>.

The Bank respectfully requests that the Court dismiss the Debtor's bankruptcy case if the Debtor is unable to provide a satisfactory explanation for its conduct as well as providing reasonable assurances that these or similar improper actions do not occur in the future.

## THE DEBTOR'S CASE IS UNLIKELY TO SUCCEED

As acknowledged in the Debtor's petition, the Debtor is a SARE entity.  Pursuant to 11 U.S.C. § 362(d)(3), upon request of the secured creditor, the court "shall" grant relief from stay with respect to a SARE debtor unless, not less than ninety (90) days after the order for relief, the SARE debtor has either (i) commenced monthly adequate protection payments of nondefault rate contract interest or (ii) filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time.

Here, the Debtor filed its petition on March 25, 2011.  Accordingly, its 90-day period expires on June 23, 2011.  As of the date hereof, the Debtor has not commenced adequate protection payments to the Bank, nor does it have the ability to do so.  As of the Petition Date, the principal balance owed to the Bank is $9 million.  Monthly interest at the nondefault contract rate is 5.875% or $44,062.50 per month for a 30-day month ($1,468.75 per diem).  The Property is vacant with the exception of two small tenants generating a combined monthly rental income of $10,046.01.  *See* Debtor's Schedule G.  Thus, the Property does not have sufficient cash flow to pay adequate protection payments to the Bank as required by Section 362(d)(3).

The Debtor has informed the Bank that it intends to propose a plan on or before June 15, 2011.  According to the Debtor, it has a tenant interested in a long term lease of 100% of the

---

[2]  Attached hereto as **Exhibit D** is a copy of the Bank's Construction Deed of Trust which gives the Bank a security interest in the rents from the Property.

23306725.DOCX

Property (66% as proposed to be re-developed) <u>provided an 11,400 sq. ft. addition is built to the</u> <u>existing first floor as a Skilled Nursing Facility (the "Addition") approved by the California</u> <u>Office of Statewide Health Planning and Development ("OSHPD")</u>.  The Debtor estimates that the Addition will cost approximately $5,900,000 to build and will take at least nine (9) months or more to obtain the necessary approvals.[3]  Obtaining the approvals, including applicable city, county, state, and other regulatory approvals, is not a certainty and the formal process has not begun.

The Bank does not believe that the "as-is" value of the Property would allow the Debtor to obtain financing sufficient to satisfy the Bank's loan and fund the Addition or to confirm a plan of reorganization over the Bank's objection.  The Debtor has attached an appraisal dated January 27, 2011 (the "Appraisal") to its 7-day Package which values the Property at $25 million <u>assuming that the Addition is built</u>.  Significantly, the Appraisal does <u>not</u> estimate the current "as-is" value of the Property or the <u>decline</u> in the value of the Property while significant portions of the existing first floor are demolished and under construction.

The Debtor also attached to its Statement of Major Issues and Timetable Report an "expression of interest" dated March 10, 2011 from Preferred Bank for a $12 million loan intended to refinance the Bank's loan and fund the Addition.  Since the Bank is owed in excess of $9.6 million and the Addition is estimated to cost at least $5.9 million, the potential Preferred Bank loan would not be sufficient to satisfy the amount needed.  Moreover, the expression of interest is conditioned on, among other things, an <u>as-is</u> loan-to-value ratio ("LTV") of no more than 65%.  Based on a prior "as-is" appraisal of the Property, the Bank believes the Debtor cannot satisfy Preferred Bank's LTV requirement -- or even come close to it.  Therefore, the Debtor has no financing for the Addition.

---

[3]  This information comes from the Debtor's Statement of Major Issues and Timetable Report that the Debtor submitted to the U.S. Trustee's Office and the Debtor's statements at the Section 341(a) meeting of creditors on April 27, 2011.

23306725.DOCX

1  The Court's determination of the value of the Property will be crucial to the outcome of

2  this case. Because the Bank's loan matured prepetition, the Debtor can only confirm a plan if it

3  pays the Bank in full on the effective date or satisfies the requirements for a cramdown. If the

4  Court determines the value of the Property to be in the range that the Bank believes it is, then the

5  Bank will be able to show that the Debtor has no equity in the Property and no reasonable

6  prospect of a reorganization and expects to obtain relief from the automatic stay.

7

8  **BAR DATE**

9  Despite its fast approaching deadline to file a plan, the Debtor has not requested

10  the Court to set a bar date. The Bank requests that the Court do so.

11

12  Dated: May 20, 2011                    KAYE SCHOLER LLP

13                                        By:   /s/ Ashleigh Danker

14                                              Ashleigh A. Danker
                                               Attorneys for Montecito Bank & Trust

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KAYE SCHOLER LLP

6

## DECLARATION OF ASHLEIGH A. DANKER

I, Ashleigh A. Danker, declare as follows:

1.    I am a bankruptcy counsel at Kaye Scholer LLP ("Kaye Scholer"), counsel to secured creditor Montecito Bank & Trust (the "Bank"). I am one of the attorneys at Kaye Scholer with primary responsibility for the representation of the Bank. I have personal knowledge of the facts in this declaration and, if called as a witness, I could and would testify competently thereto. Capitalized terms not otherwise defined herein have the same meanings ascribed to them in the motion to which this declaration is attached.

2.    A copy of the Debtor's Business Entity Detail as it appears on the California Secretary of State's website as of May 6, 2011 is attached hereto as **Exhibit A.**

3.    Attached hereto as **Exhibit B** is a copy of the Debtor's Monthly Operating Report for April 2011 (the "April MOR").

4.    Attached hereto as **Exhibit C** is a copy of an email string dated May 16, 2001 (the "Response") between counsel for the Debtor, Martin Gross, and me.

5.    Attached hereto as **Exhibit D** is a copy of the Bank's Construction Deed of Trust which gives the Bank a security interest in the rents from the Property.

6.    Kaye Scholer has in its possession and I have reviewed copies of the Debtor's 7-Package, including the Appraisal attached thereto, and the Debtor's separate Statement of Major Issues and Timetable Report, including the "expression of interest" by Preferred Bank attached thereto, submitted to the Office of the United States Trustee. In addition, I attended the Debtor's Section 341(a) meeting of creditors held on April 27, 2011.

7.    According to the petition and the April MOR, the Debtor had cash of approximately $16,144 in its primary bank account. As stated by the Debtor's principal, Roger Meyer, at the Section 341(a) meeting of creditors, at least some of this money represents the Debtor's rents from its two tenants (approximately $10,046.01 per month total), and is the Bank's cash collateral.

8.    The Debtor does not have authorization to use the Bank's cash collateral and, despite the Bank's request, has made no effort to segregate the Bank's cash collateral since the

7

Petition Date. Instead, the Debtor is improperly paying prepetition unsecured creditors and, possibly, using the Bank's cash collateral without the consent of the Bank or Court approval.

9. As of the date hereof, the Debtor has not commenced adequate protection payments to the Bank, nor does it have the ability to do so. As of the Petition Date, the principal balance owed to the Bank is $9 million. Monthly interest at the nondefault contract rate is 5.875% or $44,062.50 per month for a 30-day month ($1,468.75 per diem). The Property is vacant with the exception of two small tenants generating a combined monthly rental income of $10,046.01. *See* Debtor's Schedule G. Thus, the Property does not have sufficient cash flow to pay adequate protection payments to the Bank as required by Section 362(d)(3).

10. The Debtor's counsel has informed me that the Debtor intends to propose a plan on or before June 15, 2011. According to the Debtor, it has a tenant interested in a long term lease of 100% of the Property (66% as proposed to be re-developed) provided an 11,400 sq. ft. addition is built to the existing first floor as a Skilled Nursing Facility (the "Addition") approved by the California Office of Statewide Health Planning and Development ("OSHPD"). The Debtor estimates that the Addition will cost approximately $5,900,000 to build and will take at least nine (9) months or more to obtain the necessary approvals.[4] Obtaining the approvals, including applicable city, county, state, and other regulatory approvals, is not a certainty and the formal process has not begun.

11. The Bank does not believe that the "as-is" value of the Property would allow the Debtor to obtain financing sufficient to satisfy the Bank's loan and fund the Addition or to confirm a plan of reorganization over the Bank's objection. The Debtor has attached an appraisal dated January 27, 2011 (the "Appraisal") to its 7-day Package which values the Property at $25 million assuming that the Addition is built. Significantly, the Appraisal does not estimate the

---

[4] This information comes from the Debtor's Statement of Major Issues and Timetable Report that the Debtor submitted to the U.S. Trustee's Office and the Debtor's statements at the Section 341(a) meeting of creditors on April 27, 2011.

23306725.DOCX

KAYE SCHOLER LLP

1  current "as-is" value of the Property or the <u>decline</u> in the value of the Property while significant

2  portions of the existing first floor are demolished and under construction.

3       12.    The Debtor also attached to its Statement of Major Issues and Timetable Report an

4  "expression of interest" dated March 10, 2011 from Preferred Bank for a $12 million loan intended

5  to refinance the Bank's loan and fund the Addition.  Since the Bank is owed in excess of $9.6

6  million and the Addition is estimated to cost at least $5.9 million, the potential Preferred Bank loan

7  would not be sufficient to satisfy the amount needed.  Moreover, the expression of interest is

8  conditioned on, among other things, an <u>as-is</u> loan-to-value ratio ("LTV") of no more than 65%.

9  Based on a prior "as-is" appraisal of the Property, the Bank believes the Debtor cannot satisfy

10  Preferred Bank's LTV requirement -- or even come close to it.  Therefore, the Debtor has no

11  financing for the Addition.

12       13.    The Court's determination of the value of the Property will be crucial to the

13  outcome of this case.  Because the Bank's loan matured prepetition, the Debtor can only confirm a

14  plan if it pays the Bank in full on the effective date or satisfies the requirements for a cramdown.

15  If the Court determines the value of the Property to be in the range that the Bank believes it is, then

16  the Bank will be able to show that the Debtor has no equity in the Property and no reasonable

17  prospect of a reorganization and expects to obtain relief from the automatic stay.

18       I declare under penalty of perjury under the laws of the United States of America that the

19  foregoing is true and correct.

20  Dated: May 20, 2011

21                                              Ashleigh A. Danker

22

23

24

25

26

27

28

9

**EXHIBIT A**

## California Secretary of State Debra Bowen

Secretary of State    Administration    Elections    Business Programs    Political Reform    Archives    Registries

**Business Entities (BE)**

Online Services
- Business Search
- Disclosure Search
- E-File Statements
- Processing Times

**Main Page**

**Service Options**

**Name Availability**

**Forms, Samples & Fees**

**Annual/Biennial Statements**

**Filing Tips**

**Information Requests**
(certificates, copies &
status reports)

**Service of Process**

**FAQs**

**Contact Information**

Resources
- Business Resources
- Tax Information
- Starting A Business
- International Business
  Relations Program

**Customer Alert**
(misleading business
solicitations)

## Business Entity Detail

Data is updated weekly and is current as of Friday, May 06, 2011. It is not a complete or certified
record of the entity.

| Entity Name: | PARAGON BUILDING MAINTENANCE, INC. |
|---|---|
| Entity Number: | C1816792 |
| Date Filed: | 03/09/1992 |
| Status: | ACTIVE |
| Jurisdiction: | CALIFORNIA |
| Entity Address: | 2343 MIRA MAR AVE |
| Entity City, State, Zip: | LONG BEACH CA 90815 |
| Agent for Service of Process: | STEPHEN MARKS |
| Agent Address: | 11377 W. OLYMPIC BLVD |
| Agent City, State, Zip: | LOS ANGELES CA 90064 |

* Indicates the information is not contained in the California Secretary of State's database.

- If the status of the corporation is "Surrender," the agent for service of process is automatically
  revoked. Please refer to California Corporations Code **section 2114** for information relating to
  service upon corporations that have surrendered.
- For information on checking or reserving a name, refer to **Name Availability**.
- For information on ordering certificates, copies of documents and/or status reports or to request a
  more extensive search, refer to **Information Requests**.
- For help with searching an entity name, refer to **Search Tips**.
- For descriptions of the various fields and status types, refer to **Field Descriptions and Status
  Definitions**.

**Modify Search**    **New Search**    **Printer Friendly**    **Back to Search Results**

**Privacy Statement** | **Free Document Readers**

Copyright © 2011    California Secretary of State

Exh. A  0011

**EXHIBIT B**

CENTRAL DISTRICT OF CALIFORNIA

| In Re:<br><br>Center Court Partners LLC<br><br>Debtor(s). | CHAPTER 11 (BUSINESS)<br><br>Case Number:       1:11-bk-13715<br>Operating Report Number:<br>For the Month Ending:      4/30/2011 |
| --- | --- |

## I. CASH RECEIPTS AND DISBURSEMENTS
## A. (GENERAL ACCOUNT*)

1. TOTAL RECEIPTS PER ALL PRIOR GENERAL ACCOUNT REPORTS     _____

2. LESS: TOTAL DISBURSEMENTS PER ALL PRIOR GENERAL
ACCOUNT REPORTS     _____

3. BEGINNING BALANCE:     0.00

4. RECEIPTS DURING CURRENT PERIOD:
Accounts Receivable - Post-filing     4,131.71
Accounts Receivable - Pre-filing     _____
General Sales     _____
Other (Specify)    transfer from closed acct     16,993.39
**Other (Specify)     _____

TOTAL RECEIPTS THIS PERIOD:     21,125.10

5. BALANCE:     21,125.10

6. LESS: TOTAL DISBURSEMENTS DURING CURRENT PERIOD
Transfers to Other DIP Accounts (from page 2)     0.00
Disbursements (from page 2)     0.00

TOTAL DISBURSEMENTS THIS PERIOD:***     0.00

7. ENDING BALANCE:     21,125.10

8. General Account Number(s):     7063285584

Depository Name & Location:     Wells Fargo Westlake Branch
mailing: PO Box 6995
Portland OR, 97228

---

\*   All receipts must be deposited into the general account.
\*\*   Include receipts from the sale of any real or personal property out of the ordinary course of business; attach an exhibit specifying what was sold,
    to whom, terms, and date of Court Order or Report of Sale.
\*\*\*This amount should be the same as the total from page 2.

Exh. B 0013

## TOTAL DISBURSEMENTS FROM GENERAL ACCOUNT FOR CURRENT PERIOD:55

| Date mm/dd/yyyy | Check Number | Payee or DIP account | Purpose | *Amount Transfered | **Amount Disbursed | Amount |
|---|---|---|---|---|---|---|
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | TOTAL DISBURSEMENTS THIS PERIOD: | | 0.00 | 0.00 | $0.00 |

* Fill in amounts in this column if they are TRANSFERS to another DIP account (e.g. Payroll or Tax); the "amount" column will be filled in for you.

** Fill in amounts in this column if they are DISBURSEMENTS to outside payees; the "amount" column will be filled in for you.

Exh. B 0014

GENERAL ACCOUNT

| Bank statement Date: | 4/30/2011 | Balance on Statement: | 21,125.10 |

Plus deposits in transit (a):

| | Deposit Date | Deposit Amount |
| --- | --- | --- |
| | _____ | _____ |
| | _____ | _____ |
| | _____ | _____ |
| | _____ | _____ |
| | _____ | _____ |

| TOTAL DEPOSITS IN TRANSIT | | | 0.00 |

Less Outstanding Checks (a):

| Check Number | Check Date | Check Amount |
| --- | --- | --- |
| 2 | 4/27/2011 | 325.00 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

| TOTAL OUTSTANDING CHECKS: | | | 325.00 |

Bank statement Adjustments: _____

Explanation of Adjustments-

| the quarterly payments have not yet been cashed by the US Trustee but the check has been written. |

| ADJUSTED BANK BALANCE: | | | $20,800.10 |

\* It is acceptable to replace this form with a similar form
\*\* Please attach a detailed explanation of any bank statement adjustment

Exh. B 0015

1.  TOTAL RECEIPTS PER ALL PRIOR PAYROLL ACCOUNT REPORTS    _____

2.  LESS:  TOTAL DISBURSEMENTS PER ALL PRIOR PAYROLL
    ACCOUNT REPORTS                                          _____

3.  BEGINNING BALANCE:                                       | 0.00 |

4.  RECEIPTS DURING CURRENT PERIOD:
    (Transferred from General Account)                       _____

5.  BALANCE:                                                 | 0.00 |

6.  LESS: TOTAL DISBURSEMENTS DURING CURRENT PERIOD
    TOTAL DISBURSEMENTS THIS PERIOD:***                      | 0.00 |

7.  ENDING BALANCE:                                          | 0.00 |

8.  PAYROLL Account Number(s):                          _____

    Depository Name & Location:                        _____
                                                       _____
                                                       _____
                                                       _____

Exh. B 0016

| Date mm/dd/yyyy | Check Number | Payee | Purpose | Amount |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

TOTAL DISBURSEMENTS THIS PERIOD: _____   Exh. B 0017

Case 1:11-bk-13715-MT   Doc 26   Filed 05/18/11   Entered 05/18/11 11:36:45   Desc
Main Document   Page 6 of 28

PAYROLL ACCOUNT RECONCILIATION

Bank statement Date: _____   Balance on Statement: _____

Plus deposits in transit (a):

| Deposit Date | Deposit Amount |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

TOTAL DEPOSITS IN TRANSIT                                                   0.00

Less Outstanding Checks (a):

| Check Number | Check Date | Check Amount |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

TOTAL OUTSTANDING CHECKS:                                                  0.00

Bank statement Adjustments:                               _____
Explanation of Adjustments-

ADJUSTED BANK BALANCE:                                                   $0.00

* It is acceptable to replace this form with a similar form
** Please attach a detailed explanation of any bank statement adjustment

Exh. B 0018

L. CASH RECEIPTS AND DISBURSEMENTS 05/20/11 17:24:55    Desc
C. (TAX ACCOUNT) opened Main Document ... trustee cause ... data available for April

1.  TOTAL RECEIPTS PER ALL PRIOR TAX ACCOUNT REPORTS    _____

2.  LESS:  TOTAL DISBURSEMENTS PER ALL PRIOR TAX
ACCOUNT REPORTS    _____

3.  BEGINNING BALANCE:    | 0 |

4.  RECEIPTS DURING CURRENT PERIOD:
    (Transferred from General Account)    _____

5.  BALANCE:    | 0.00 |

6.  LESS: TOTAL DISBURSEMENTS DURING CURRENT PERIOD
    TOTAL DISBURSEMENTS THIS PERIOD:***    | 0.00 |

7.  ENDING BALANCE:    | 0.00 |

8.  TAX Account Number(s):    _____

    Depository Name & Location:    _____
    _____
    _____

Exh. B 0019

| Date mm/dd/yyyy | Check Number | Payee | Purpose | Amount |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

TOTAL DISBURSEMENTS THIS PERIOD: 

Exh. B 0020

Bank statement Date: _____   Balance on Statement: _____

Plus deposits in transit (a):

|  | Deposit Date | Deposit Amount |
|---|---|---|
|  | _____ | _____ |
|  | _____ | _____ |
|  | _____ | _____ |
|  | _____ | _____ |
|  | _____ | _____ |

TOTAL DEPOSITS IN TRANSIT                                   | 0.00 |

Less Outstanding Checks (a):

| Check Number | Check Date | Check Amount |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

TOTAL OUTSTANDING CHECKS:                                   | 0.00 |

Bank statement Adjustments:                                _____
Explanation of Adjustments-

┌─────────────────────────────────────────────────────────────────┐
│                                                                   │
└─────────────────────────────────────────────────────────────────┘

ADJUSTED BANK BALANCE:                                      | $0.00 |

\* It is acceptable to replace this form with a similar form
\*\* Please attach a detailed explanation of any bank statement adjustment

Exh. B 0021

Case 1:11-bk-13715-MT   Doc 20   Filed 05/18/11   Entered 05/20/11 17:24:55   Desc
Main Document    Page 23 of 60

# I. D. SUMMARY SCHEDULE OF CASH

## ENDING BALANCES FOR THE PERIOD:

(Provide a copy of monthly account statements for each of the below)

|  |  |  |
|---|---|---|
| wells fargo | General Account: | 21,125.10 |
|  | Payroll Account: | 0.00 |
| wells fargo (5/2/11) | Tax Account: | 0.00 |
| *Other Accounts: 1st California | 2024632 | 0.00 |
| Montecito Bank and trust | 197000708 | 2,199.34 |
| *Other Monies: |  |  |
|  | **Petty Cash (from below): | 0.00 |

### TOTAL CASH AVAILABLE:                                23,324.44

### Petty Cash Transactions:

| Date | Purpose | Amount |
|------|---------|--------|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

### TOTAL PETTY CASH TRANSACTIONS:                          0.00

* Specify the Type of holding (e.g. CD, Savings Account, Investment Security), and the depository name, location & account#
** Attach Exhibit Itemizing all petty cash transactions

Exh. B 0022

II. STATUS OF PAYMENTS TO SECURED CREDITORS, LESSORS,
AND OTHER PARTIES TO EXECUTORY CONTRACTS

| Creditor, Lessor, Etc. | Frequency of Payments (Mo/Qtr) | Amount of Payment | Post-Petition payments not made (Number) | Total Due |
|---|---|---|---|---|
| Aid Alert Security | monthly | 130 | 0 | 0.00 |
| Amer. Janitoral Services | monthly | 150 | 0 | 0.00 |
| AT&T | monthly | 160 | 1 | 343.81 |
| Farmer's Insurance | bi-annually | 4656 | 0 | 0.00 |
| JRM Equities-landscape | monthly | 550 | 0 | 0.00 |
| JRM Equities-property | monthly | 2000 | 0 | 0.00 |
| Las Virgenes Water Dist. | monthly | 800 | 1 | 820.29 |
| Southern CA Edison | monthly | 1200 | 0 | 0.00 |
| Southern CA Gas Co. | monthly | 500 | 0 | 0.00 |
| ThyssenKrupp Elevator | monthly | 680 | 2 | 981.04 |
| Vacco HVAC | monthly | 110 | 1 | 720.00 |
| Wast Mgmt GI | monthly | 300 | 0 | 0.00 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | TOTAL DUE: | 2,865.14 |

## III. TAX LIABILITIES

FOR THE REPORTING PERIOD:

Gross Sales Subject to Sales Tax: _____
Total Wages Paid: _____

| | Total Post-Petition Amounts Owing | Amount Delinquent | Date Delinquent Amount Due |
|---|---|---|---|
| Federal Withholding | 0.00 | 0.00 | |
| State Withholding | 0.00 | 0.00 | |
| FICA- Employer's Share | 0.00 | 0.00 | |
| FICA- Employee's Share | 0.00 | 0.00 | |
| Federal Unemployment | 0.00 | 0.00 | |
| Sales and Use | 0.00 | 0.00 | |
| Real Property | 68,148.20 | 68,148.20 | penalty 4/10/11 |
| Other: | | | |
| TOTAL: | 68,148.20 | 68,148.20 | |

Exh. B 0023

Case 1:11-bk-13715-MT    Doc 26    Filed 05/18/11    Entered 05/18/11 11:36:45    Desc
Main Document    Page 12 of 28

## IV. AGING OF ACCOUNTS PAYABLE AND RECEIVABLE

|  | *Accounts Payable Post-Petition | Accounts Receivable | |
|---|---|---|---|
|  |  | Pre-Petition | Post-Petition |
| 30 days or less |  |  |  |
| 31 - 60 days |  |  |  |
| 61 - 90 days |  |  |  |
| 91 - 120 days |  |  |  |
| Over 120 days |  |  |  |
| TOTAL: | 0.00 | 0.00 | 0.00 |

## V. INSURANCE COVERAGE

|  | Name of Carrier | Amount of Coverage | Policy Expiration Date | Premium Paid Through (Date) |
|---|---|---|---|---|
| General Liability |  |  |  |  |
| Worker's Compensation |  |  |  |  |
| Casualty |  |  |  |  |
| Vehicle |  |  |  |  |
| Others: |  |  |  |  |
|  |  |  |  |  |

## VI. UNITED STATES TRUSTEE QUARTERLY FEES
## (TOTAL PAYMENTS)

| Quarterly Period Ending (Date) | Total Disbursements | Quarterly Fees | Date Paid | Amount Paid | Quarterly Fees Still Owing |
|---|---|---|---|---|---|
| 4/7/2011 | 325.00 | 325.00 | 27-Apr-2011 | 325.00 | 0.00 |
|  |  |  |  |  | 0.00 |
|  |  |  |  |  | 0.00 |
|  |  |  |  |  | 0.00 |
|  |  |  |  |  | 0.00 |
|  |  |  |  |  | 0.00 |
|  |  |  |  |  | 0.00 |
|  |  |  |  |  | 0.00 |
|  |  |  |  |  | 0.00 |
|  |  |  |  |  | 0.00 |
|  |  |  |  |  | 0.00 |
|  |  |  |  |  | 0.00 |
|  |  |  |  |  | 0.00 |
|  |  |  |  |  | 0.00 |
|  |  |  |  |  | 0.00 |
|  |  |  |  |  | 0.00 |
|  |  |  |  |  | 0.00 |
|  | 325.00 |  |  | 325.00 | 0.00 |

* Post-Petition Accounts Payable SHOULD NOT include professionals' fees and expenses which have been incurred but not yet awarded by the court.  Post
Accounts Payable SHOULD include professionals' fees and expenses authorized by Court Order but which remain unpaid as of the close of the period repo

Exh. B 0024

VII. SCHEDULE OF COMPENSATION PAID TO INSIDERS

| Name of Insider | Date of Order Authorizing Compensation | *Authorized Gross Compensation | Gross Compensation Paid During the Month |
|---|---|---|---|
| Roger W. Meyer | N/A | 0 | 0.00 |
| Karen A. Meyer | N/A | 0 | 0.00 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

VIII.  SCHEDULE OF OTHER AMOUNTS PAID TO INSIDERS

| Name of Insider | Date of Order Authorizing Compensation | Description | Amount Paid During the Month |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

* Please indicate how compensation was identified in the order (e.g. $1,000/week, $2,500/month)

Exh. B 0025

CCP does not use accrual basis accounting

|  | Current Month | Cumulative Post-Petition |
|---|---|---|
| **Sales/Revenue:** | | |
| Gross Sales/Revenue | | |
| Less: Returns/Discounts | | |
| Net Sales/Revenue | 0.00 | 0.00 |
| **Cost of Goods Sold:** | | |
| Beginning Inventory at cost | | |
| Purchases | | |
| Less: Ending Inventory at cost | | |
| Cost of Goods Sold (COGS) | 0.00 | 0.00 |
| **Gross Profit** | 0.00 | 0.00 |
| Other Operating Income (Itemize) | | |
| **Operating Expenses:** | | |
| Payroll - Insiders | | |
| Payroll - Other Employees | | |
| Payroll Taxes | | |
| Other Taxes (Itemize) | | |
| Depreciation and Amortization | | |
| Rent Expense - Real Property | | |
| Lease Expense - Personal Property | | |
| Insurance | | |
| Real Property Taxes | | |
| Telephone and Utilities | | |
| Repairs and Maintenance | | |
| Travel and Entertainment (Itemize) | | |
| Miscellaneous Operating Expenses (Itemize) | | |
| Total Operating Expenses | 0.00 | 0.00 |
| Net Gain/(Loss) from Operations | 0.00 | 0.00 |
| **Non-Operating Income:** | | |
| Interest Income | | |
| Net Gain on Sale of Assets (Itemize) | | |
| Other (Itemize) | | |
| Total Non-Operating income | 0.00 | 0.00 |
| **Non-Operating Expenses:** | | |
| Interest Expense | | |
| Legal and Professional (Itemize) | | |
| Other (Itemize) | | |
| Total Non-Operating Expenses | 0.00 | 0.00 |
| **NET INCOME/(LOSS)** | 0.00 | 0.00 |

(Attach exhibit listing all itemizations required above)

Exh. B 0026

CCP does not use accrual basis accounting

ASSETS

|  | Current Month End |
|---|---|
| Current Assets: | |
| Unrestricted Cash | |
| Restricted Cash | |
| Accounts Receivable | |
| Inventory | |
| Notes Receivable | |
| Prepaid Expenses | |
| Other (Itemize) | |
| Total Current Assets | 0.00 |
| | |
| Property, Plant, and Equipment | |
| Accumulated Depreciation/Depletion | |
| Net Property, Plant, and Equipment | 0.00 |
| | |
| Other Assets (Net of Amortization): | |
| Due from Insiders | |
| Other (Itemize) | |
| Total Other Assets | 0.00 |
| TOTAL ASSETS | 0.00 |

LIABILITIES

| Post-petition Liabilities: | |
|---|---|
| Accounts Payable | |
| Taxes Payable | |
| Notes Payable | |
| Professional fees | |
| Secured Debt | |
| Other (Itemize) | |
| Total Post-petition Liabilities | 0.00 |
| | |
| Pre-petition Liabilities: | |
| Secured Liabilities | |
| Priority Liabilities | |
| Unsecured Liabilities | |
| Other (Itemize) | |
| Total Pre-petition Liabilities | 0.00 |
| TOTAL LIABILITIES | 0.00 |

EQUITY:

| Pre-petition Owners' Equity | |
|---|---|
| Post-petition Profit/(Loss) | |
| Direct Charges to Equity | |
| TOTAL EQUITY | 0.00 |
| TOTAL LIABILITIES & EQUITY | |

Exh. B 0027

|     |                                                                                                                              | No | Yes |
| --- | ---------------------------------------------------------------------------------------------------------------------------- | -- | --- |
| 1.  | Has the debtor-in-possession made any payments on its pre-petition unsecured debt, except as have been authorized by the court? If "Yes", explain below: | X  | ___ |

|     |                                                                                                                              | No | Yes |
| --- | ---------------------------------------------------------------------------------------------------------------------------- | -- | --- |
| 2.  | Has the debtor-in-possession during this reporting period provided compensation or remuneration to any officers, directors, principals, or other insiders without appropriate authorization? If "Yes", explain below: | X  | ___ |

3. State what progress was made during the reporting period toward filing a plan of reorganization
completed 7 day package and meeting with creditors took place during this reporting period

4. Describe potential future developments which may have a significant impact on the case:
TI moving forward with Mariners

5. Attach copies of all Orders granting relief from the automatic stay that were entered during the
reporting period.

|     |                                                                                                                              | No | Yes |
| --- | ---------------------------------------------------------------------------------------------------------------------------- | -- | --- |
| 6.  | Did you receive any exempt income this month, which is not set forth in the operating report? If "Yes", please set forth the amounts and sources of the income below. | X  | ___ |

I,   Roger Meyer, Managing Member
declare under penalty of perjury that I have fully read and understood the foregoing debtor-in-possession operating report and that the information contained herein is true and complete to the best of my knowledge.

| 5/12/11 |  | /s/ Roger Meyer |
| --- | --- | --- |
| Date |  | Principal for debtor-in-possession |

Exh. B 0028

UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
CENTRAL DISTRICT OF CALIFORNIA

| In Re:<br><br>Center Court Partners LLC<br><br><br>Debtor(s). | CHAPTER 11 (BUSINESS)<br><br>Case Number:   1:11-bk-13715<br>Operating Report Number:<br>For the Month Ending:   4/30/2011 |
|---|---|

## I. CASH RECEIPTS AND DISBURSEMENTS
### A. (GENERAL ACCOUNT*)
First California Bank Acct (pre-DIP acct)

1.  TOTAL RECEIPTS PER ALL PRIOR GENERAL ACCOUNT REPORTS                          22,183.48

1st cal bank's beginning statement

2.  LESS:  TOTAL DISBURSEMENTS PER ALL PRIOR GENERAL
ACCOUNT REPORTS                                                          _____

3.  BEGINNING BALANCE:                                                    22,183.48

4.  RECEIPTS DURING CURRENT PERIOD:
    Accounts Receivable - Post-filing             5,914.30
    Accounts Receivable - Pre-filing              _____
    General Sales                                 _____
    Other (Specify)          _____           _____
    **Other (Specify)        _____           _____

    TOTAL RECEIPTS THIS PERIOD:                                           5,914.30

5.  BALANCE:                                                              28,097.78

6.  LESS: TOTAL DISBURSEMENTS DURING CURRENT PERIOD
    Transfers to Other DIP Accounts (from page 2)          16,993.39
    Disbursements (from page 2)                            11,104.39

    TOTAL DISBURSEMENTS THIS PERIOD:***                                   28,097.78

7.  ENDING BALANCE:              closing to start DIP acct 4/15           0.00

8.  General Account Number(s):               2024632

    Depository Name & Location:    First California Bank
                                   PO box 5112
                                   Westlake Village, CA 91359

*    All receipts must be deposited into the general account.
**   Include receipts from the sale of any real or personal property out of the ordinary course of business; attach an exhibit specifying what was sold,
     to whom, terms, and date of Court Order or Report of Sale.
***This amount should be the same as the total from page 2.

Exh. B 0029

## TOTAL DISBURSEMENTS FROM GENERAL ACCOUNT FOR CURRENT PERIOD

| Date mm/dd/yyyy | Check Number | Payee or DIP account | Purpose | *Amount Transfered | **Amount Disbursed | Amount |
|---|---|---|---|---|---|---|
| 4/5/2011 | 2737 | City Lights Fin. | BK court filing fees repayment | | 1,039.00 | 1,039.00 |
| 4/6/2011 | 2738 | Martin Gross | Legal Fees | | 2,000.00 | 2,000.00 |
| 4/6/2011 | ach debit | Waste Mgmt | Trash disposal | | 225.22 | 225.22 |
| 4/8/2011 | ach debit | So Cal Edison | Electricity | | 804.88 | 804.88 |
| 4/8/2011 | 2726 | Rocky Ortega | legal fees: van nuys case | | 4,087.50 | 4,087.50 |
| 4/8/2011 | 2739 | JRM Equities | property mgmt and landscape maint | | 2,550.00 | 2,550.00 |
| 4/11/2011 | 2736 | American Janitor | janitorial services | | 300.00 | 300.00 |
| 4/14/2011 | 2740 | American Express | architect printing for Mariner T.I. | | 97.79 | 97.79 |
| 4/15/2011 | | 7063285584 | closing acct, transferring to DIP | 16,993.39 | | 16,993.39 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | TOTAL DISBURSEMENTS THIS PERIOD: | 16,993.39 | 11,104.39 | $28,097.78 |

* Fill in amounts in this column if they are TRANSFERS to another DIP account (e.g. Payroll or Tax); the "amount" column will be filled in for you.

** Fill in amounts in this column if they are DISBURSEMENTS to outside payees; the "amount" column will be filled in for you.

Exh. B 0030

## GENERAL ACCOUNT
## BANK RECONCILIATION

Bank statement Date: _____4/29/2011_____    Balance on Statement: _____$0.00

Plus deposits in transit (a):

| Deposit Date | Deposit Amount |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

TOTAL DEPOSITS IN TRANSIT                                    | 0.00 |

Less Outstanding Checks (a):

| Check Number | Check Date | Check Amount |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

TOTAL OUTSTANDING CHECKS:                                    | 0.00 |

Bank statement Adjustments:                                  _____
Explanation of Adjustments-

Closing this general use account in order to create a DIP general account and a DIP Tax Account

ADJUSTED BANK BALANCE:                                       | $0.00 |

* It is acceptable to replace this form with a similar form
** Please attach a detailed explanation of any bank statement adjustment

Exh. B 0031

UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
CENTRAL DISTRICT OF CALIFORNIA

| In Re:<br><br>Center Court Partners LLC<br><br><br>Debtor(s). | CHAPTER 11 (BUSINESS)<br><br>Case Number:                1:11-bk-13715<br>Operating Report Number:<br>For the Month Ending:            4/30/2011 |
|---|---|

I. CASH RECEIPTS AND DISBURSEMENTS
A. (GENERAL ACCOUNT*)
Montecito bank and trust (locked acct)

| | |
|---|---|
| 1.  TOTAL RECEIPTS PER ALL PRIOR GENERAL ACCOUNT REPORTS | 0.00 |
| 2.  LESS:  TOTAL DISBURSEMENTS PER ALL PRIOR GENERAL ACCOUNT REPORTS | 0.00 |
| 3.  BEGINNING BALANCE: | 2,428.01 |

4.  RECEIPTS DURING CURRENT PERIOD:

| | |
|---|---|
| Accounts Receivable - Post-filing | 0.00 |
| Accounts Receivable - Pre-filing | 0.00 |
| General Sales | 0.00 |
| Other (Specify) | 0.00 |
| **Other (Specify) | 0.00 |

| | |
|---|---|
| TOTAL RECEIPTS THIS PERIOD: | 0.00 |
| 5.  BALANCE: | 2,428.01 |

6.  LESS: TOTAL DISBURSEMENTS DURING CURRENT PERIOD

| | |
|---|---|
| Transfers to Other DIP Accounts (from page 2) | 0.00 |
| Disbursements (from page 2) | 228.67 |

| | |
|---|---|
| TOTAL DISBURSEMENTS THIS PERIOD:*** | 228.67 |
| 7.  ENDING BALANCE: | 2,199.34 |

8.  General Account Number(s):

| Depository Name & Location: | Montecito Bank and Trust<br>mailing: PO Box: 2460<br>Santa Barbara, CA 93120 |
|---|---|

*    All receipts must be deposited into the general account.

## TOTAL DISBURSEMENTS FROM GENERAL ACCOUNT FOR CURRENT PERIOD

| Date mm/dd/yyyy | Check Number | Payee | Purpose | Amount |
|---|---|---|---|---|
| 4/27/2011 | Auto debit | The Gas Company | automatic debit of gas bill | 228.67 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | TOTAL DISBURSEMENTS THIS PERIOD: | 228.67 |

Exh. B 0033

# Advantage Business Package Checking

**Account number:** 7063285584 ■ April 20, 2011 - April 30, 2011 ■ Page 1 of 4

**WELLS FARGO**

*general acct* (handwritten)

CENTER COURT PARTNERS, LLC
DEBTOR IN POSSESSION
CH 11 CASE #11-13715 (CCA)
501 S REINO RD STE I
#240
NEWBURY PARK CA 91320-4270

## Questions?

Available by phone 24 hours a day, 7 days a week:
**1-800-CALL-WELLS** (1-800-225-5935)

TTY: 1-800-877-4833
En español: 1-877-337-7454

Online: wellsfargo.com/biz

Write: Wells Fargo Bank, N.A. (114)
P.O. Box 6995
Portland, OR 97228-6995

## Your Business and Wells Fargo

The Wells Fargo Business Insight Resource Center offers free access to business information and advice through videos, articles, podcasts and other resources. This site offers objective information from industry experts, best practices from real business owners, as well as numerous Wells Fargo solutions that can help you run your business. Visit the site at wellsfargobusinessinsights.com.

## Account options

A check mark in the box indicates you have these convenient services with your account. Go to wellsfargo.com/biz or call the number above if you have questions or if you would like to add new services.

| | |
|---|---|
| Business Online Banking | ☑ |
| Rewards for Business Check Card | ☐ |
| Online Statements | ☐ |
| Business Bill Pay | ☐ |
| Business Spending Report | ☑ |
| Overdraft Protection | ☑ |

## Activity summary

| | |
|---|---|
| Beginning balance on 4/20 | $0.00 |
| Deposits/Credits | 21,125.10 |
| Withdrawals/Debits | - 0.00 |
| **Ending balance on 4/30** | **$21,125.10** |
| Average ledger balance this period | $18,120.22 |

**Account number:** 7063285584

CENTER COURT PARTNERS, LLC
DEBTOR IN POSSESSION
CH 11 CASE #11-13715 (CCA)

California account terms and conditions apply

For Direct Deposit and Automatic Payments use
Routing Number (RTN): 121042882

For Wire Transfers use
Routing Number (RTN): 121000248

## Overdraft Protection

Your account is linked to the following for Overdraft Protection:
■ Savings - 000007014312743

Exh. B 0034



**WELLS FARGO**

## Transaction history

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|---|---|---|---|---|---|
| 4/20 | | Deposit | | | 16,993.39 |
| 4/28 | | Deposit | 16,993.39 | | 16,993.39 |
| | | | 4,131.71 | | 21,125.10 |
| **Ending balance on 4/30** | | | | | 21,125.10 |
| **Totals** | | | **$21,125.10** | **$0.00** | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

## Account transaction fees summary

| Service charge description | Units used | Units included | Excess units | Service charge per excess units ($) | Total service charge ($) |
|---|---|---|---|---|---|
| Paid and Deposited Items | 2 | 150 | 0 | 0.50 | 0.00 |
| **Total service charges** | | | | | **$0.00** |

With Wells Fargo Business Online, you can get free*, timely account alerts to notify you when important transactions occur. Choose to be notified when a deposit or withdrawal posts, when balances fall below a certain level, and more. You can also customize how you'd like to be notified - by email, text message, or both. It's an easy way to stay on top of critical business information.

Setting up alerts is easy. Simply sign on to Wells Fargo Business Online at wellsfargo.com/biz. Select the "Messages & Alerts" tab, then select "Set Up/Modify Alerts".

*Alerts sent to your wireless device may be subject to a fee by your wireless service.

Stay a step ahead... Introducing My Money Map

- Discover smart ways to manage your money online.
- Set savings and spending goals and monitor them over time.
- Get automatic updates to track your progress.

My Money Map builds on the success of My Spending Report, Budget Watch and My Savings Plan used by thousands of customers like you every day.

Online customers can start using My Money Map immediately-it's so easy, and there's no setup required. Colorful, easy-to-review charts create an instant snapshot of your finances. Use My Money Map to track deposits, categorize spending, and easily create a budget.

Online customers go to wellsfargo.com, sign on, then select the My Money Map tab to get started. Not an Online Banking customer? Visit wellsfargo.com, or wellsfargo.com/biz to sign up today.

## ☑ IMPORTANT ACCOUNT INFORMATION

AMENDMENT TO FUNDS AVAILABILITY POLICY

**WELLS FARGO**

Starting on or about May 9, 2011, and ending on June 22, 2011 (subject to the location of the deposit transaction):

We will increase the amount of funds made available to you if a hold is placed against your deposit. If a hold is placed, the first $200 of the deposit will be available to you on the first Business Day (second Business Day for certain Alaska deposits) after the day of your deposit. We will notify you if a hold is placed against your deposit and when the full amount of your deposit will become available.

**WELLS FARGO**

## General statement policies for Wells Fargo Bank

■ **Notice:** Wells Fargo Bank, N.A. may furnish information about accounts belonging to individuals, including sole proprietorships, to consumer reporting agencies. If this applies to you, you have the right to dispute the accuracy of information that we have reported by writing to us at: Overdraft Collections and Recovery, P.O. Box 5058, Portland, OR 97208-5058.

You must describe the specific information that is inaccurate or in dispute and the basis for any dispute with supporting documentation. In the case of information that relates to an identity theft, you will need to provide us with an identity theft report.

## Account Balance Calculation Worksheet

1. Use the following worksheet to calculate your overall account balance.

2. Go through your register and mark each check, withdrawal, ATM transaction, payment, deposit or other credit listed on your statement. Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

3. Use the chart to the right to list any deposits, transfers to your account, outstanding checks, ATM withdrawals, ATM payments or any other withdrawals (including any from previous months) which are listed in your register but not shown on your statement.

**ENTER**

A. The ending balance
shown on your statement . . . . . . . . . . . . . . . . . . . . . . $ _____

**ADD**

B. Any deposits listed in your                  $ _____
register or transfers into                      $ _____
your account which are not                      $ _____
shown on your statement.                      + $ _____

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

**CALCULATE THE SUBTOTAL**
(Add Parts A and B)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

**SUBTRACT**

C. The total outstanding checks and
withdrawals from the chart above . . . . . . . . . . . . - $ _____

**CALCULATE THE ENDING BALANCE**
(Part A + Part B - Part C)
This amount should be the same
as the current balance shown in
your check register . . . . . . . . . . . . . . . . . . . . . . $ _____

| Number | Items Outstanding | Amount |
|--------|-------------------|--------|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  | **Total amount** $ |  |

©2010 Wells Fargo Bank, N.A. All rights reserved. Member FDIC.

**FIRST CALIFORNIA BANK**

P.O. BOX 5112
WESTLAKE VILLAGE, CA 91359-5112
1-800-856-7905

PAGE    1

CENTERCOURT PARTNERS LLC
ROGER MEYER
5011 S REINO RD STE 240
NEWBURY PARK CA 91320-4268

---

PLATINUM BUSINESS CHECKING    ACCOUNT CLOSED    ACCOUNT NO    2024632
STATEMENT DATE    04/29/2011
LAST STATEMENT DATE    03/31/2011

7    STATEMENT PERIOD

| | | |
|---|---|---|
| PREVIOUS BALANCE | 22,183.48 | # OF DAYS-STMT PERIOD    29 |
| 1 DEPOSITS/CREDITS | 5,914.30 | |
| 9 CHECKS/WITHDRAWALS | 28,097.78 | AVERAGE BALANCE    9,450.75 |
| ENDING BALANCE | 0.00 | |
| TOTAL SRV CHG TODAY | 0.00 | YTD INTEREST    0.00 |

### DEPOSITS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 04/07/11 | DEPOSIT | 5,914.30 |

### WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 04/06/11 | WASTE MANAGEMENT | 225.22 |
| | ACH DEBIT  8668342080 100061421036 | |
| 04/08/11 | SO CALIF EDISON  CENTER COURT PARTNERS | 804.88 |
| | ACH DEBIT  PAYMENTS | |
| 04/15/11 | CLOSING DEBIT | 16,993.39 |

### CHECKS

| CHECK NO | AMOUNT | DATE | CHECK NO | AMOUNT | DATE |
|---|---|---|---|---|---|
| 2726 | 4,087.50 | 04/08/11 | 2738 | 2,000.00 | 04/06/11 |
| 2736 | 300.00 | 04/11/11* | 2739 | 2,550.00 | 04/08/11 |
| 2737 | 1,039.00 | 04/05/11 | 2740 | 97.79 | 04/14/11 |

* INDICATES BREAK IN SEQUENCE

### DAILY BALANCE SUMMARY

| DATE | AMOUNT | DATE | AMOUNT |
|---|---|---|---|
| 04/05/2011 | 21,144.48 | 04/11/2011 | 17,091.18 |
| 04/06/2011 | 18,919.26 | 04/14/2011 | 16,993.39 |
| 04/07/2011 | 24,833.56 | 04/15/2011 | 0.00 |
| 04/08/2011 | 17,391.18 | | |



SEE REVERSE FOR IMPORTANT INFORMATION



EQUAL
HOUSING

Exh. B 0038



**Montecito**
**Bank & Trust**

P.O. Box 2460
Santa Barbara, CA 93120-2460
(805) 963-7511

Centercourt Partners LLC                                    30-0
11 N Via Los Altos                                              0
Newbury Park CA  91320-7005                                     0

Own your own business?  Becoming an entrepreneur?  This February in Santa
Barbara we hosted "Revive & Thrive: New Strategies for Business Success
in 2011"?  Attended by over 200 local business leaders, this informative
event featured Jane Applegate - a nationally recognized business
management expert - who shared practical tips and proven strategies on
management, money, and marketing.
We invite you to join us in May when we bring "Revive & Thrive" to
Ventura County - May 18th in Westlake Village and May 19th in Ventura.
Visit montecito.com/thebiz to register and read Jane's monthly series of
exclusive online business columns.

BUSINESS FREE CHECKING ACCOUNT 197000708

|  |  | LAST STATEMENT 03/31/11 | 2,428.01 |
|---|---|---|---|
| MINIMUM BALANCE | 2,199.34 | CREDITS | .00 |
| AVG AVAILABLE BALANCE | 2,404.35 | 1 DEBITS | 228.67 |
| AVERAGE BALANCE | 2,404.35 | THIS STATEMENT 04/29/11 | 2,199.34 |

- - - - - - OTHER DEBITS - - - - - - -

| DESCRIPTION | DATE | AMOUNT |
|---|---|---|
| THE GAS COMPANY PAID SCGC 0467317666 | 04/27 | 228.67 |

- - ITEMIZATION OF OVERDRAFT AND RETURNED ITEM FEES - - -

```
***************************************************************
*                          |   TOTAL FOR   |    TOTAL        *
*                          |  THIS PERIOD  |  YEAR TO DATE   *
*------------------------------------------------------------*
* TOTAL OVERDRAFT FEES:    |      .00      |      .00        *
*------------------------------------------------------------*
* TOTAL RETURNED ITEM FEES:|      .00      |      .00        *
***************************************************************
```

* * * C O N T I N U E D * * *

EQUAL HOUSING
LENDER MEMBER FDIC

NOTICE: SEE REVERSE SIDE FOR IMPO          Exh. B 0039

Montecito
Bank & Trust

P.O. Box 2460
Santa Barbara, CA 93120-2460
(805) 963-7511

Centercourt Partners LLC

197000708    04/29/2011

=======================================================================
BUSINESS - FREE CHECKING ACCOUNT  197000708
=======================================================================

DAILY BALANCE

| DATE | BALANCE | DATE | BALANCE | DATE | BALANCE |
|------|---------|------|---------|------|---------|
| 04/27 | 2,199.34 | | | | |

EQUAL HOUSING
LENDER  MEMBER FDIC

**EXHIBIT C**

**Danker, Ashleigh**

| | |
|---|---|
| **From:** | Danker, Ashleigh |
| **Sent:** | Monday, May 16, 2011 1:11 PM |
| **To:** | 'Martin' |
| **Subject:** | RE: Centercourt - April MOR |
| | |
| **Categories:** | RETAIN |

Martin,

At this point, the Bank has not agreed to any use of its cash collateral.  The postpetition rents constituting the Bank's cash collateral must be segregated and accounted for so that it is clear that the funds are not being commingled with other funds and not being used without an order of the Court authorizing such use.

In addition, even as to funds, if any, that are not the Bank's cash collateral, the Debtor cannot pay prepetition debts on a postpetition basis or pay a postpetition retainer without Court approval.

Ashleigh


**Ashleigh Danker**
KAYE SCHOLER LLP
1999 Avenue of the Stars | Suite 1600
Los Angeles, California 90067
T: +1 310.788.1235 | F: +1 310.229.1935
ADanker@kayescholer.com | www.kayescholer.com

 please consider the environment - do you really need to print this email?


This message may contain confidential and/or legally privileged information from the law firm Kaye Scholer LLP. If delivered to anyone other than the intended recipient, please notify the sender immediately by return email or by telephone (+1 310.788.1235) and delete the message, along with any attachments, from your computer. Thank you.

**From:** Martin [mailto:martin@lawgross.com]
**Sent:** Monday, May 16, 2011 12:35 PM
**To:** Danker, Ashleigh
**Subject:** RE: Centercourt - April MOR

Ashleigh:

All of these disbursements happened on the First California account before it was closed because the debtor (Center Court) did not know it was supposed to create a debtor in possession account.  The DIP account was opened on 4/18/11 with Wells Fargo and is now the active general account for all rents and disbursements.   The final transaction of the First Financial account actually shows the closing of the account and withdrawing the funds to be put within the now active DIP account.

1- 4/5--$1,039 reimbursement for filing to City Lights.  This particular filing is for the bankruptcy petition initial filing which City Lights paid for up front and Center Court reimbursed when funds were available.

2- 4/6--$2,000 Center Court had filed the Bankruptcy case with a different attorney before hiring Marty Gross to handle the case, so unfortunately his retainer had to happen post petition.

Exh. C 0042

3- 4/6--$225 payment to Waste Management: Center Court Partners was told by the office of the US Trustee to continue paying for all services on the building to maintain basic operation, these are recurring monthly obligations that had begun prepetition, and will continue postpetiton to ensure daily function of the building.

4-4/8--$804.88 to So. Cal Edison: Center Court Partners was told by the office of the US Trustee to continue paying for all services on the building to maintain basic operation, these are recurring monthly obligations that had begun prepetition, and will continue postpetiton to ensure daily function of the Building.

5-4/8--$4,087.40 to Rocky Ortega. This was a check for legal fees on the Van Nuys case (LS021121) that was written and assumed disbursed prepetition on 2/15/2011; Mr. Ortega did not cash it until this point.

6-4/8--$2,550 to JRM Equities. Center Court Partners was told by the office of the US Trustee to continue paying for all services on the building to maintain basic operation, these are recurring monthly obligations that had begun prepetition, and will continue postpetiton to ensure daily function of the Building.

7-4/11--$300 to American Janitor. Center Court Partners was told by the office of the US Trustee to continue paying for all services on the building to maintain basic operation, these are recurring monthly obligations that had begun prepetition, and will continue postpetiton to ensure daily function of the Building.

8-4/14--$97.79 to American Express. This payment was a postpetition obligation for the architects to keep TI's moving forward for the Mariner lease and work towards Center Court Partners plan of reorganization.

I'm unclear why another account needs to be set-up strictly for rental deposits from the two tenants. These rents come to some $10,000 and the monthly expenses for the property are roughly $7,500. There's not enough to fight over. I will again instruct the client not to use any funds from this account above and beyond the monthly required operating expenses for the property. It is not their intention to use the cash collateral for anything other than the monthly fixed expenses. I thought I had provided you a copy of those monthly statements and I think they were attached to the April MOR.

Please let me know if this is acceptable.

Martin Gross

---

**From:** Danker, Ashleigh [mailto:ADanker@kayescholer.com]
**Sent:** Friday, May 13, 2011 3:26 PM
**To:** 'Martin'
**Cc:** Cashdan, Russ
**Subject:** Centercourt - April MOR

Martin,

The April MOR shows a number of disbursements about which the Bank has questions:

1- 4/5 – $1,039 payment to City Lights for reimbursement of filing fee. This appears to be an improper payment of a prepetition obligation. Please explain. Also, was this paid from cash collateral?
2- 4/6 – $2,000 payment to you for a retainer. This appears to be an unauthorized postpetition retainer. Please explain. Also, was this paid from cash collateral?
3- 4/6 – $225 payment to Waste Management. Was this paid on account of a prepetition obligation? Was it paid from cash collateral?
4- 4/8 - $804.88 payment to So. Cal Edison. Was this paid on account of a prepetition obligation? Was it paid from cash collateral?

Exh. C 0043

5- 4/8 - $4,087.40 payment to Rocky Ortega. This appears to be an improper payment of a prepetition obligation or an improper postpetition payment to a counsel not employed by the bankruptcy estate. Please explain. Also, was this paid from cash collateral?

6- 4/8 - $2,550 payment to JRM Equities. Was this paid on account of a prepetition obligation? Was it paid from cash collateral?

7- 4/11 - $300 payment to American Janitor. Was this paid on account of a prepetition obligation? Was it paid from cash collateral?

8- 4/14 $97.79 payment to American Express. Was this paid on account of a prepetition obligation? Was it paid from cash collateral?

Finally, it does not appear that the debtor has set up a segregated account to hold the postpetition rents that are cash collateral of the Bank.  If this is correct, please make sure that the debtor does so immediately  and transfers the postpetition rents into it immediately.  At this time, the debtor does not have authorization to use cash collateral.  The unauthorized use of cash collateral may constitute a basis for dismissal of the bankruptcy case.

Ashleigh

Ashleigh Danker
KAYE SCHOLER LLP
1999 Avenue of the Stars | Suite 1600
Los Angeles, California 90067
T: +1 310.788.1235 | F: +1 310.229.1935
ADanker@kayescholer.com | www.kayescholer.com

 please consider the environment - do you really need to print this email?

This message may contain confidential and/or legally privileged information from the law firm Kaye Scholer LLP. If delivered to anyone other than the intended recipient, please notify the sender immediately by return email or by telephone (+1 310.788.1235) and delete the message, along with any attachments, from your computer. Thank you.

                    *    *    *    *

IRS CIRCULAR 230 DISCLOSURE:  To ensure compliance with Treasury Department regulations, we inform you that any U.S. federal tax advice contained in this correspondence (including any attachments) is not intended or written to be used, and cannot be used for the purpose of (i) avoiding penalties that may be imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Exh. C 0044

**EXHIBIT D**

RECORDATION REQUESTED BY:
 Montecito Bank & Trust
 P. O. Box 2460
 Santa Barbara, CA 93120

WHEN RECORDED MAIL TO:
 Montecito Bank & Trust
 Attn: Note Dept
 P.O. Box 2460
 Santa Barbara, CA 93120



08/17/07

**20071934043**

*102 0968*

FOR RECORDER'S USE ONLY

## CONSTRUCTION DEED OF TRUST

**THIS DEED OF TRUST** is dated August 7, 2007, among <u>Centercourt Partners, LLC</u>, a California Limited Liability Company, whose address is 11 N. Via Los Altos, Newbury Park, CA 91320 ("Trustor"); Montecito Bank & Trust, whose address is P. O. Box 2460, Santa Barbara, CA 93120 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Mountain Financial Corporation, whose address is P.O. Box 2460, Santa Barbara, CA 93120-2460 (referred to below as "Trustee").

**CONVEYANCE AND GRANT.** Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, **(the "Real Property")** located in Los Angeles County, State of California:

> See Exhibit "A", which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully set forth herein.

**The Real Property or its address is commonly known as 29501 Canwood Street, Agoura Hills, CA 91301. The Assessor's Parcel Number for the Real Property is 2053-001-006.**

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. This is an absolute assignment of Rents made in connection with an obligation secured by real property pursuant to California Civil Code Section 2938. In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF THE TRUSTOR UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST.   THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS ALSO GIVEN TO SECURE ANY AND ALL OF TRUSTOR'S OBLIGATIONS UNDER THAT CERTAIN CONSTRUCTION LOAN AGREEMENT BETWEEN TRUSTOR AND LENDER OF EVEN DATE HEREWITH.  ANY EVENT OF DEFAULT UNDER THE CONSTRUCTION LOAN AGREEMENT, OR ANY OF THE RELATED DOCUMENTS REFERRED TO THEREIN, SHALL ALSO BE AN EVENT OF DEFAULT UNDER THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Trustor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Trustor's obligations under the Note, this Deed of Trust, and the Related Documents.

**CONSTRUCTION MORTGAGE.** This Deed of Trust is a "construction mortgage" for the purposes of Sections 9-334 and 2A-309 of the Uniform Commercial Code, as those sections have been adopted by the State of California.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Trustor agrees that Trustor's possession and use of the Property shall be governed by the following provisions:

> **Possession and Use.** Until the occurrence of an Event of Default, Trustor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

> **Duty to Maintain.** Trustor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

> **Compliance With Environmental Laws.** Trustor represents and warrants to Lender that: (1) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or  (c)  any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Trustor nor

---

**LOS ANGELES,CA      DOCUMENT: TD 2007.1934043**

**Page 1 of 12**

**Printed on 10/8/2007 9:05:28 AM          Provided by DataTrace System**

Exh. D 0046

## DEED OF TRUST
### (Continued)

any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person. The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances. Trustor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Trustor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Trustor agrees neither to abandon or leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**Construction Loan.** If some or all of the proceeds of the loan creating the Indebtedness are to be used to construct or complete construction of any Improvements on the Property, the Improvements shall be completed no later than the maturity date of the Note (or such earlier date as Lender may reasonably establish) and Trustor shall pay in full all costs and expenses in connection with the work. Lender will disburse loan proceeds under such terms and conditions as Lender may deem reasonably necessary to insure that the interest created by this Deed of Trust shall have priority over all possible liens, including those of material suppliers and workmen. Lender may require, among other things, that disbursement requests be supported by receipted bills, expense affidavits, waivers of liens, construction progress reports, and such other documentation as Lender may reasonably request.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Trustor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Trustor. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Trustor shall pay when due (and in all events at least ten (10) days prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the

Exh. D 0047

# DEED OF TRUST
## (Continued)

Property.

**Notice of Construction.** Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Trustor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Trustor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Notwithstanding the foregoing, in no event shall Trustor be required to provide hazard insurance in excess of the replacement value of the improvements on the Real Property. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Trustor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. If in Lender's sole judgment Lender's security interest in the Property has been impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If the proceeds are to be applied to restoration and repair, Trustor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

**Trustor's Report on Insurance.** Upon request of Lender, however not more than once a year, Trustor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Trustor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Trustor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Trustor's failure to discharge or pay when due any amounts Trustor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Trustor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Trustor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Trustor's Indebtedness shall be paid in full.

Exh. D 0048

# DEED OF TRUST
## (Continued)

Page 4

---

**CONDEMNATION.** The following provisions relating to eminent domain and inverse condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any eminent domain or inverse condemnation proceeding is commenced affecting the Property, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to pursue or defend the action and obtain the award. Trustor may be the nominal party in any such proceeding, but Lender shall be entitled, at its election, to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If any award is made or settlement entered into in any condemnation proceedings affecting all or any part of the Property or by any proceeding or purchase in lieu of condemnation, Lender may at its election, and to the extent permitted by law, require that all or any portion of the award or settlement be applied to the Indebtedness and to the repayment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation proceedings.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Trustor which Trustor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Trustor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Trustor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Trustor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-In-Fact.** If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Trustor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Lender may charge Trustor a reasonable reconveyance fee at the time of reconveyance.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Trustor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Trustor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Trustor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in

Exh. D 0049

# DEED OF TRUST
## (Continued)

any of the Related Documents.

**Default on Other Payments.** Failure of Trustor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Trustor or on Trustor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Trustor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Trustor's existence as a going business or the death of any member, the insolvency of Trustor, the appointment of a receiver for any part of Trustor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Trustor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Trustor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Trustor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Trustor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Trustor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Trustor under the terms of any other agreement between Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Trustor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Trustor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment is curable and if Trustor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Trustor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Trustor under this Deed of Trust, after Trustor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Foreclosure by Sale.** Upon an Event of Default under this Deed of Trust, Beneficiary may declare the entire indebtedness secured by this Deed of Trust immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the Note, other documents requested by Trustee, and all documents evidencing expenditures secured hereby. After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

**Judicial Foreclosure.** With respect to all or any part of the Real Property, Lender shall have the right in lieu of foreclosure by power of sale to foreclose by judicial foreclosure in accordance with and to the full extent provided by California law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including without limitation the right to recover any deficiency in the manner and to the full extent provided by California law.

Exh. D 0050

## DEED OF TRUST
### (Continued)

Page 6

**Collect Rents.** Lender shall have the right, without notice to Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Notice of Sale.** Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Trustor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of Los Angeles County, State of California. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**Acceptance by Trustee.** Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

**NOTICES.** Any notice required to be given under this Deed of Trust shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. Trustor requests that copies of any notices of default and sale be directed to Trustor's address shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice

Exh. D 0051

## DEED OF TRUST
### (Continued)

purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address. Unless otherwise provided or required by law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors.

**STATEMENT OF OBLIGATION FEE.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**ASSOCIATION OF UNIT OWNERS.** The following provisions apply if the Real Property has been submitted to unit ownership law or similar law for the establishment of condominiums or cooperative ownership of the Real Property:

> **Power of Attorney.** Trustor grants an irrevocable power of attorney to Lender to vote in Lender's discretion on any matter that may come before the association of unit owners. Lender shall have the right to exercise this power of attorney only after Trustor's default; however, Lender may decline to exercise this power as Lender sees fit.

> **Insurance.** The insurance as required above may be carried by the association of unit owners on Trustor's behalf, and the proceeds of such insurance may be paid to the association of unit owners for the purpose of repairing or reconstructing the Property. If not so used by the association, such proceeds shall be paid to Lender.

> **Default.** Trustor's failure to perform any of the obligations imposed on Trustor by the declaration submitting the Real Property to unit ownership, by the bylaws of the association of unit owners, or by any rules or regulations thereunder, shall be an event of default under this Deed of Trust. If Trustor's interest in the Real Property is a leasehold interest and such property has been submitted to unit ownership, any failure by Trustor to perform any of the obligations imposed on Trustor by the lease of the Real Property from its owner, any default under such lease which might result in termination of the lease as it pertains to the Real Property, or any failure of Trustor as a member of an association of unit owners to take any reasonable action within Trustor's power to prevent a default under such lease by the association of unit owners or by any member of the association shall be an Event of Default under this Deed of Trust.

**PARTIAL RELEASE.** Lender shall issue partial releases of the Property upon payment to Lender of eighty-five percent (85.000%) of the Net Sales Proceeds (defined below) provided that the minimum release price for each individual unit shall never be less than the equivalent of three hundred thirty dollars ($330.00) per square foot of the individual unit being released. Prior to any partial release, Lender shall require that a minimum of fifty percent (50.0%) of all units be under binding purchase contracts from duly qualified buyers and in escrow. Trustor shall provide Lender with verification of the purchase price of the unit(s) being reconveyed in form and content satisfactory to Lender. Net Sales Proceeds shall be defined as the gross sales price for each unit less (a) reasonable and customary closing costs, and (b) a real estate commission payable to a licensed real estate brokerage company not to exceed six percent (6.000%) of the gross sales price. Each release shall include a $45.00 reconveyance fee and a $30.00 forwarding fee. Lender shall be under no obligation to issue partial releases if the Note is in default or if the release might result in an illegal subdivision of the Property.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

> **Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

> **Annual Reports.** If the Property is used for purposes other than Trustor's residence, Trustor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Trustor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

> **Arbitration.** Trustor and Lender agree that all disputes, claims and controversies between them whether individual, joint, or class in nature, arising from this Deed of Trust or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any Property shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant to Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any Property, including any claim to rescind, reform, or otherwise modify any agreement relating to the Property, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Trustor and Lender agree that in the event of an action for judicial foreclosure pursuant to California Code of Civil Procedure Section 726, or any similar provision in any other state, the commencement of such an action will not constitute a waiver of the right to arbitrate and the court shall refer to arbitration as much of such action, including counterclaims, as lawfully may be referred to arbitration. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Deed of Trust shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

> **Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

> **Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

> **Governing Law.** This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of California.

> **Choice of Venue.** If there is a lawsuit, Trustor agrees upon Lender's request to submit to the jurisdiction of the courts of Santa Barbara County, State of California.

Exh. D 0052

## DEED OF TRUST
### (Continued)

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or of any of Trustor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means Montecito Bank & Trust, and its successors and assigns.

**Borrower.** The word "Borrower" means Centercourt Partners, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means Montecito Bank & Trust, its successors and assigns.

**Note.** The word "Note" means the promissory note dated August 7, 2007, **in the original principal amount of $10,000,000.00** from Trustor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. NOTICE TO TRUSTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property. The words "Personal Property" also include all tangible and intangible items obtained or owned by, or in the possession of Trustor that are directly or indirectly related to the acquisition, development, design, construction, permitting, marketing, or habitation of the Real Property or the Improvements to be constructed on the

Exh. D 0053

## DEED OF TRUST
### (Continued)

Page 9

Real Property, whether heretofore or hereafter issued, prepared, or executed, including without limitation all permits, licenses, authorizations and approvals, trademarks and tradenames, and any and all land use entitlements, development rights, sewer capacity, approvals, density allocations and other rights or approvals relating to or authorizing the development or occupancy of the Property, plus all utility or other deposits, reimbursement rights, studies, tests, contracts, plans and specifications, relating to the Property and Improvements.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness; except that the words do not mean any guaranty or environmental agreement, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future leases, rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property together with the cash proceeds of the Rents.

**Trustee.** The word "Trustee" means Mountain Financial Corporation, whose address is P.O. Box 2460, Santa Barbara, CA 93120-2460 and any substitute or successor trustees.

**Trustor.** The word "Trustor" means Centercourt Partners, LLC.

TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND TRUSTOR AGREES TO ITS TERMS, INCLUDING THE VARIABLE RATE PROVISIONS OF THE NOTE SECURED BY THIS DEED OF TRUST.

TRUSTOR:

CENTERCOURT PARTNERS, LLC

By: _____ managing member

Roger W. Meyer, Managing Member of Centercourt Partners, LLC

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _California_ )
                        ) SS
COUNTY OF _Ventura_ )

On _August 13_, 20 _07_ before me, _Sarah Meaghan Roark notary public_
                                                 (here insert name and title of the officer)

personally appeared Roger W. Meyer, ~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _Sarah Meaghan Roark_, NOTARY PUBLIC                    (Seal)

SARAH MEAGHAN ROARK
COMM. #1699470
NOTARY PUBLIC-CALIFORNIA
VENTURA COUNTY
My Comm. Expires October 17, 2010

**DEED OF TRUST**
**(Continued)**                                        Page 10

---

**(DO NOT RECORD)**
**REQUEST FOR FULL RECONVEYANCE**
(To be used only when obligations have been paid in full)

To: _____, Trustee

The undersigned is the legal owner and holder of all indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to: _____

Date: _____            Beneficiary: _____
                                                    By: _____
                                                    Its: _____

LASER PRO Lending, Ver. 5.37.00.002 Copr. Harland Financial Solutions, Inc. 1997, 2007.  All Rights Reserved.   - CA  G:\LLAPPS\CFI\LPL\G01 FC  TR-6133  PR-20

Exh. D 0055

# EXHIBIT "A"

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

That portion of Lot "H" of the Partition of the Rancho Las Virgines, as per Map of said Partition filed with the Decree in Case 2898 of the Superior Court of said County, described as follows:

Beginning at a point bearing South 86° 35' East 853.57 feet (the bearing of the West line of said Lot "H"); thence South 86° 55' East 287.43 feet; thence South 28° 45' 46" West 301.69 feet"); thence South 1° 38' 50" East 230.28 feet; thence South 21° 01' 50" East to the Easterly prolongation of a line which is parallel with and distant Northerly 33.00 feet, measured at right angles from that certain course described as having a bearing of North 80° 57' 34" West and a length of 217.51 feet in the deed to the State of California, recorded on February 20, 1962 as Instrument No. 1531, in Book D-1517, Page 817, of Official Records; thence Westerly along said parallel line to a line, bearing North 9° 10' 30" East and passes through the point of beginning; thence North 9° 10' 30" East to the Point of Beginning.

The land above is shown as a portion of Parcel 54 on Maps, filed in Book 15, Pages 8 and 9 of Records of Surveys, in the Office of the County Recorder of said County.

**Assessor's Parcel Number:**          **2053-001-006**

Exh. D 0056

# EXHIBIT "A"

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

That portion of Lot "H" of the Partition of the Rancho Las Virgines, as per Map of said Partition filed with the Decree in Case 2898 of the Superior Court of said County, described as follows:

Beginning at a point bearing South 86° 35' East 853.57 feet (the bearing of the West line of said Lot "H"); thence South 86° 55' East 287.43 feet; thence South 28° 45' 46" West 301.69 feet; thence South 1° 38' 50" East 230.28 feet; thence South 21° 01' 50" East to the Easterly prolongation of a line which is parallel with and distant Northerly 33.00 feet, measured at right angles from that certain course described as having a bearing of North 80° 57' 34" West and a length of 217.51 feet in the deed to the State of California, recorded on February 20, 1962 as Instrument No. 1531, in Book D-1517, Page 817, of Official Records; thence Westerly along said parallel line to a line, bearing North 9° 10' 30" East and passes through the point of beginning; thence North 9° 10' 30" East to the Point of Beginning.

The land above is shown as a portion of Parcel 54 on Maps, filed in Book 15, Pages 8 and 9 of Records of Surveys, in the Office of the County Recorder of said County.

Assessor's Parcel Number:          2053-001-006

| In re:  CENTER COURT PARTNERS, LLC | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER 1:11-bk-13715-MT |

**Note:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.  Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

1999 Avenue of the Stars, Suite 1700
Los Angeles, California  90067

The foregoing document described as *Statement Of Montecito Bank & Trust With Respect To Case Management Conference; Declaration of Ashleigh A. Danker in Support Thereof* will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

☒  **I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document.  On **May 20, 2011**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

☐  **II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On **May 20, 2011,** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

☐  **III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to Fed. R. Civ. Proc. 5 and/or controlling LBR, on _____, 2011 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 20, 2011  Ashleigh A. Danker | *Nahly Vau* |
|---|---|
| Date          Type Name | Signature |

10

23306725.DOCX

KAYE SCHOLER LLP

**In re Center Court Partners, LLC**
**U.S.B.C., Central District of California, San Fernando Valley Division**
**Case No. 1:11-bk-13715-MT**

## I. SERVED ELECTRONICALLY VIA NEF:

- Katherine Bunker    kate.bunker@usdoj.gov
- Melissa J Fassett    mjf@ppplaw.com
- Martin D Gross    martin@lawgross.com
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov

## II. SERVED VIA OVERNIGHT MAIL:

**Honorable Maureen A. Tighe**
U.S. Bankruptcy Court
21041 Burbank Blvd., Suite #325
Woodland Hills, CA 91367

23306725.DOCX