Ashleigh A. Danker (Bar Number 138419)
Email address: adanker@kayescholer.com
KAYE SCHOLER LLP
1999 Avenue of the Stars, Suite 1700
Los Angeles, California 90067
Telephone: (310) 788-1000
Facsimile: (310) 788-1200

Attorneys for Secured Creditor
Montecito Bank & Trust

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re<br><br>CENTER COURT PARTNERS, LLC,<br>Debtor and Debtor-in-Possession | Case No. 1:11-bk-13715-MT<br><br>Chapter 11<br><br>**MONTECITO BANK & TRUST'S OBJECTION TO APPLICATION OF DEBTOR APPROVING EMPLOYMENT OF ATTORNEY [ROCKY ORTEGA]; JOINDER IN OBJECTION BY UNITED STATES TRUSTEE; RESERVATION OF RIGHTS; AND DECLARATION OF ASHLEIGH A. DANKER IN SUPPORT THEREOF**<br><br>Date: June 20, 2011<br>Time: 1:00 p.m.<br>Place: Courtroom 302<br>    United States Bankruptcy Court<br>    21041 Burbank Blvd.<br>    Woodland Hills, CA 91367 |

60222499_6.DOCX

**TO THE HONORABLE MAUREEN A. TIGHE, UNITED STATES BANKRUPTCY JUDGE, THE DEBTOR, ROCKY ORTEGA, THE UNITED STATES TRUSTEE, AND OTHER PARTIES IN INTEREST:**

Montecito Bank & Trust (the "Bank") is the secured creditor with respect to the sole asset of debtor in possession Center Court (sic) Partners, LLC[1] (the "Debtor"), a two-story medical use condominium building in Agoura Hills consisting of twenty-two (22) sellable or rentable units constructed in 2008 for use as medical offices (the "Property"). The Debtor has filed an application to employ attorney Rocky Ortega as general bankruptcy counsel (Docket No. 44, the "Application"), including with respect to the action styled *Center Court Partners, LLC v. Montecito Bank & Trust,* Adversary Proceeding No. 1:11-ap-01384-MT (the "Van Nuys Action"), removed to this Court on May 23, 2011. The Bank objects to the Application and proposed employment of Mr. Ortega including, without limitation, for the following reasons:

A.  <u>Procedural Objections - Missing Declaration Regarding Disinterestedness and Lack of Proper Notice</u>

Although the Application references an attached declaration of Rocky Ortega regarding disinterestedness, none is attached. In the Application, the Debtor discloses that "the Debtor is informed that [Mr. Ortega] has represented the creditors in other past unrelated matters...." (Application, p. 6, lines 4-5) Mr. Ortega has already acknowledged to counsel for the Bank, without providing any further details, that he has represented City Lights Financial and/or one of its principals, Joseph Miller, a creditor of and proposed equity investor for the Debtor, in other matters. *See* Declaration of Ashleigh A. Danker ("Danker Decl."), attached hereto, ¶ 2. Without a declaration from Mr. Ortega describing in detail his current and past representation of creditors in this case and others with interests in, or potentially adverse to, the estate, it is impossible to fully evaluate Mr. Ortega's disinterestedness, which appears not to be the case. To the extent that

---

[1] According to the California Secretary of State's Office and the Bank's loan documents, the Debtor's name is correctly shown as "Centercourt Partners, LLC."

60222499_6.DOCX

the Debtor and/or Mr. Ortega provide additional information in support of the Application prior to the hearing, the Bank reserves its rights to renew or raise any objections which may become apparent as a result.

In addition, the Application is not accompanied by a notice or a proof of service. Based upon the description of service contained in the Application (page 6, lines 8-10), the Notice of Electronic Filing associated with the Application (after it was paper-filed and imaged by the Clerk's Office five days after the paper filing), and the Docket of the case, it appears that proper notice of the Application was <u>not</u> given in accordance with Local Bankruptcy Rule 2014-1(b)(2)(A). Rather, the only notice that appears to have been given was to the Bank, which was served by fax on the day of the paper filing, and to the parties on the NEF list five days after the paper filing.

B.  <u>Substantive Objections - Duplication of Services, Conflict of Interest, and Lack of Evidence of Qualifications</u>

    1.  <u>Mr. Ortega Cannot Be Employed as General Bankruptcy Counsel to the Debtor</u>

As described in detail in the objection to the Application filed by the Office of the United States Trustee (Docket No. 47, the "UST Objection"), the Debtor seeks to employ Mr. Ortega to perform services both as general bankruptcy counsel in the main case and as counsel in the Van Nuys Action. The Bank hereby joins in all aspects of the UST Objection and incorporates the UST Objection herein in its entirety. Clearly, Mr. Ortega cannot be employed as general bankruptcy counsel to the Debtor. The Debtor already has general bankruptcy counsel -- the Law Offices of Martin D. Gross -- employing a second counsel to perform the same services is unnecessary and could lead to duplication of services. In addition, Mr. Ortega has a retainer agreement with the Debtor's principal, Roger Meyer. *See* Application, Exh. A. Mr. Meyer is a guarantor of the Debtor's obligation to the Bank and is being sued by the Bank (*see* Adversary Action 1:11-ap-01385) for, among other things, breach of his guaranty. Accordingly, Mr. Ortega would have a conflict of interest in serving as general bankruptcy counsel to the Debtor and also

3

representing Mr. Meyer. Finally, the Application does not contain any evidence that Mr. Ortega is qualified to serve as general bankruptcy counsel. Based on the foregoing, the Bank respectfully requests the Court to deny Mr. Ortega's employment as general bankruptcy counsel to the Debtor.

2. <u>Mr. Ortega Should Not Be Employed as Special Bankruptcy Counsel in the Van Nuys Action</u>

To the extent that the Debtor seeks to employ Mr. Ortega solely as special counsel in the Van Nuys Action, such request should be denied as well. As described above, the Application lacks a declaration describing Mr. Ortega's disinterestedness, including his current and past representations of creditors of the estate and would-be equity investors such as City Lights Financial and Joseph Miller. Even if Mr. Ortega only serves as special counsel under 11 U.S.C. § 327(e), the Debtor should not be allowed to employ an attorney who has connections to creditors and would-be equity investors with interests that could be adverse to those of the Debtor or the estate in the Van Nuys Action.

For example, Mr. Miller of City Lights Financial appears to be the leading advocate behind the Debtor's ill-conceived plan of reorganization, acknowledging the Bank as an oversecured creditor and yet seeking to impose a discount on the Debtor's payment of its obligations to the Bank. Under the plan, Mr. Miller's company was to provide an equity infusion of $2.1 million in exchange for a 50% interest in the Debtor. In September 2010, however, Mr. Miller signed a noncontingent Asset Purchase Agreement ("APA") to purchase 50% of the Debtor's equity for $5,946,000.00, payable upon execution.[2] A copy of the APA is attached hereto as **Exhibit A**. For reasons unknown to the Bank, the Debtor's principals have not sued Mr. Miller for breach of the APA. It appears, however, that Mr. Miller is trying to use the

---

[2] The Debtor entered into the APA notwithstanding a covenant in the Construction Loan Agreement prohibiting the Debtor from transferring any of its interests without the consent of the Bank, which consent was not sought.

4

bankruptcy case as a means to bolster his profit on his proposed investment. If Mr. Ortega's loyalty is to Mr. Miller, a party who has little to lose in the Van Nuys Action, and not to the Debtor, who has a great deal to lose, then Mr. Ortega should not be allowed to serve as special counsel in that action.

If the Court determines that Mr. Ortega may not be employed as special counsel in the Van Nuys Action, the Bank notes that the Debtor's general bankruptcy counsel appears fully capable of providing the needed services. Mr. Gross, the Debtor's general bankruptcy counsel, is employed "to represent the Debtor at all hearings, meetings of creditors, conferences, trials, and other proceedings in this case" and "to perform such other legal services as may be necessary in connection with this case." *See* Docket No. 17, *Application of Debtor for Order Approving Employment of Attorney [Martin Gross]*, p. 4, lines 24-27. According to Mr. Gross's website, Mr. Gross is experienced in business litigation.[3] Moreover, Mr. Gross, and not Mr. Ortega, filed the removal of the Van Nuys Action and Mr. Gross, unlike Mr. Ortega, has an ECF number for the Bankruptcy Court. <u>(Indeed, if the Court authorizes any aspect of Mr. Ortega's proposed employment, the Bank requests that Mr. Ortega be directed to obtain an ECF number immediately so that he can submit electronic filings and not enjoy an unfair advantage over the Bank's attorneys through the docketing delays created by his paper filings.)</u>

C.   <u>Conclusion</u>

Based on the foregoing, the Bank respectfully request the Court to deny the Application.

Dated: July ___, 2011

KAYE SCHOLER LLP

By: ___/s/ Ashleigh Danker___
Ashleigh A. Danker
Attorneys for Montecito Bank & Trust

---

[3] A copy of Mr. Gross's webpage as it appeared on the internet on June 29, 2011 is attached hereto as **Exhibit B**.

# DECLARATION OF ASHLEIGH A. DANKER

I, Ashleigh A. Danker, declare as follows:

1. I am a bankruptcy counsel at Kaye Scholer LLP ("Kaye Scholer"), counsel to secured creditor Montecito Bank & Trust (the "Bank") in the above-captioned bankruptcy case. I am one of the attorneys at Kaye Scholer with primary responsibility for the representation of the Bank. I have personal knowledge of the facts in this declaration and, if called as a witness, I could and would testify competently thereto. Capitalized terms not otherwise defined herein have the same meanings ascribed to them in the motion to which this declaration is attached.

2. I attended the status conference in this case held on June 23, 2011. Prior to the hearing, outside the Courtroom, I met for the first time, Rocky Ortega, proposed counsel for the Debtor. Mr. Ortega introduced himself and asked me if I would be willing to have a conversation with Joseph Miller, who was present with Mr. Ortega. Mr. Ortega told me that Mr. Miller was not an attorney and that he -- Mr. Ortega -- had no objection if I spoke directly to Mr. Miller. I asked Mr. Ortega if he represented Mr. Miller. Mr. Ortega told me that he represented Mr. Miller in other matters. When I pressed him as to whether he was representing Mr. Miller in connection with the Debtor's bankruptcy case, Mr. Ortega responded words to the effect that "he was not about to be deposed" and declined to answer my question.

3. As I met with Mr. Ortega on June 23, 2011 outside the Courtroom, I already knew Mr. Miller, among other things, from the Debtor's Section 341(a) meeting of creditors, which Mr. Miller attended in person, and from references to him and his company, City Lights Financial, in the Debtor's petition (which lists City Lights Financial as a creditor), and the Debtor's proposed plan of reorganization (which acknowledges City Lights Financial as a creditor and provides for City Lights Financial to acquire 50% of the Debtor). I also knew of Mr. Miller from a copy of an executed Asset Purchase Agreement dated September 24, 2010, provided to me by the Bank, pursuant to which Mr. Miller, personally, agreed to acquire a 50% interest in the Debtor for a cash payment of $5,946,000, due upon execution. The Bank had been given a copy of the Asset Purchase Agreement ("APA") by the Debtor in approximately September 2010 and told that Mr.

6

Miller had become a 50% owner of the Debtor.  A copy of the APA is attached hereto as **Exhibit A.**  To the best of my knowledge, the Debtor's principals have not sued Mr. Miller for breach of the APA, leading me to believe that the APA was a sham intended to deceive the Bank regarding the Debtor's prospects for re-developing the Property.

      4.      A copy the webpage for Martin Gross as it appeared on the internet on June 29, 2011 is attached hereto as **Exhibit B.**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: July 6, 2011

Ashleigh A. Danker

# EXHIBIT A

## ASSET PURCHASE AGREEMENT

AGREEMENT (this "AGREEMENT"), dated as of the __24__ th day of September, 2010, by and between Roger Meyer, Karen Meyer (hereinafter collectively "MEYER" or "SELLERS") and Joseph Miller (hereinafter, "MILLER" or "BUYER").

### RECITALS

**WHEREAS**, CENTERCOURT PARTNERS, LL, was established pursuant to an Operating Agreement effective as of March 24, 2005. The Original Operating Agreement shall hereinafter be referred to as the "**Operating Agreement**". All capitalized terms used herein shall, unless otherwise defined, have the meanings as set forth in the Operating Agreement; and,

**WHEREAS**, as of the Effective Date of this AGREEMENT, SELLERS are Members of CENTERCOURT PARTNERS, owning one-hundred percent (100%) membership interest in CENTERCOURT PARTNERS, LLC; and,

**WHEREAS**, SELLERS desires to sell, and BUYER desires to purchase a fifty percent (50%) membership interest in CENTERCOURT PARTNERS, LLC (hereinafter "ASSETS");

**WHEREAS**, this AGREEMENT between SELLERS and BUYER constitutes an Agreement between all of the members of CENTERCOURT PARTNERS, LLC who hereby consent and agree to this transfer;

**NOW THEREFORE**, in consideration of the mutual covenants, agreements, representations and warranties contained herein, the parties hereby agree as follows:

1. **PURCHASE AND SALE**

    A.  KAREN MEYER hereby sells, transfers and assigns to MILLER and MILLER hereby purchases, acquires and accepts from KAREN MEYER, a 8.45% membership interest of CENTERCOURT PARTNERS, LLC.

    B.  ROGER MEYER hereby sells, transfers and assigns to MILLER and MILLER hereby purchases, acquires and accepts from ROGER MEYER, a 41.55% membership interest of CENTERCOURT PARTNERS, LLC.

    C.  SELLERS shall sell the ASSETS to BUYER effective as of the date of full execution of this AGREEMENT, conditioned on the payment of the PURCHASE PRICE by means of bills of sale, assignments, endorsements, certificates and such other instruments of transfer as shall be necessary or appropriate to vest good title in BUYER.

1

2. **PURCHASE PRICE.** The total monetary consideration to be paid by BUYERS to SELLER shall be $5,946,000.00 to be paid as follows:

   A.  $5,946,000.00 concurrently with the execution and delivery of the AGREEMENT.

3. **DELIVERIES.** The parties agree to make the following simultaneous deliveries:

   A.  SELLERS shall deliver the following:
   i.  Assignments of Membership Interest in favor of MILLER, and,
   ii. First Amendment to the Operating Agreement

   B.  BUYER shall deliver the following:
   i.  Asset Purchase Agreement
   ii. $5,946,000.00

4. **FURTHER ASSURANCES.** SELLERS agrees to cooperate fully with BUYER and to execute such further instruments, documents and agreements and to give such further written assurances, as may be reasonably requested by BUYER, to better evidence and consummate the transactions described herein and contemplated hereby, and to carry into effect the intents and purposes of this AGREEMENT. BUYER agrees to cooperate fully with SELLERS and to execute such further instruments, documents and agreements and to give such further written assurances, as may be reasonably requested by SELLERS, to better evidence and consummate the transactions described herein and contemplated hereby, and to carry into effect the intents and purposes of this Agreement.

5. **ORAL MODIFICATION.** This AGREEMENT may be modified or amended only by an instrument in writing signed by both SELLERS and BUYER.

6. **FEES AND EXPENSES.** All fees and expenses incurred in connection with this AGREMENT and the transactions contemplated by this AGREEMENT will be paid by the party incurring such fees or expenses, whether or not the transactions contemplated hereby are consummated.

7. **GOVERNING LAW.** This AGREEMENT will be governed by and construed in accordance with the laws of the State of California,

2

disregarding its conflicts of laws principles which may require the application of the laws of another jurisdiction.

8. **SECTION HEADINGS.** Section headings are for convenient reference only and will not affect the meaning or have any bearing on the interpretation of any provision of this AGREEMENT.

9. **ENTIRE AGREEMENT.** This AGREEMENT, together with any other documents referred to herein or delivered pursuant hereto that form a part hereof, constitute the entire agreement between the parties hereto with respect to the subject matter hereof and supersede all other prior agreements and understandings, both written and oral, between the parties or either of them with respect to the subject mater hereof.

10. **COUNTERPARTS.** This AGREEMENT may be executed in any number of counterparts, each of which will be deemed an original, but all of which will constitute one and the same instrument.

11. **SEVERABILITY.** If and to the extent that any Court of competent jurisdiction holds any provisions (or any part thereof) of this AGREMENT to be invalid or unenforceable, such holding shall in no way affect the validity of the remainder of the AGREEMENT.

12. **SURVIVAL OF AGREMENTS.** Subject to the express limitations contained in this AGREMENT, all covenants, agreements, representations and warranties made in this AGREEMENT shall survive the execution and delivery of this AGREEMENT and the consummation of the transactions contemplated by this AGREEMENT.

IN WITNESS WHEREOF, this AGREEMENT is executed by the parties on the date(s) set forth below.

Date: 9/24/10

_Karen Meyer_
KAREN MEYER

Date: 9/24/10

_[signature]_
ROGER MEYER

Date: 9/24/10

_[signature]_
JOSEPH MILLER

3

# EXHIBIT B



### About the Law Offices of Martin D. Gross

**Overview**

The **Law Offices of Martin D. Gross**, A Professional Corporation, focus on personal injury insurance disputes, bankruptcy petitions, and consumer protection. The firm maintains offices in Los Angeles and Orange County to serve clients in all of Southern California.

---

**Martin D. Gross**



Mr. **Gross** practices in the areas of personal injury and consumer protection, including bankruptcy, insurance disputes and business litigation.

He has represented clients in state and federal court, in mediations, arbitrations and before numerous administrative courts. Mr. **Gross** is involved in numerous community and civic organizations in Orange and Los Angeles County.

He received his Bachelor of Arts degree, with honors from the University of Florida. Mr. **Gross** received his Law degree from Whittier College School of Law, where he was on the staff of the Whittier Law Review.

---

**Locations**

| Santa Ana Office | Santa Monica |
| --- | --- |
| 150 El Camino Real, Suite 100 | 2001 Wilshire Boulevard, Suite 205 |
| Tustin, CA 92780 | Santa Monica, CA 90403 |
| 1.800.797.8888 or 714.569.3000 | 310.453.8320 |
| Fax: 714.569.3001 | Fax: 310.861.1359 |
| info@lawgross.com | info@lawgross.com |
| Click here for directions | Click here for directions |

**CONTACT US, 1.800.797.8888**

Name:

Company *(if appicable)*:

Address 1:

Address 2:

City:

State:

Zip:

Telephone:

E-Mail:

When is the best day/time to call?:

Which of our services are you interested in:
☐ **Bankruptcy**
*(Chapters 7, 11, or 13)*
☐ **Personal Injury**
*(Slip and Fall, Auto Accident, Wrongful Death, etc.)*
☐ **Business Law**
*(Contracts, Partnerships, Wills & Trusts, etc.)*

Message:

[ Submit ]

---

Home | About Us | Services | In The News | Testimonials | Contact Us
©2009 Martin D. Gross, APC.. All Rights Reserved

Not a referral service. Filing a false or fraudulent California workers compensation claim is a felony subject to up to 5 years in prison or fine of up to $50,000 or double the value of the fraud, whichever is greater, or by both imprisonment & fine. Every case is different. Results vary and depend on the facts and law applicable to each case. No guarantee, warranty or prediction is offered regarding the outcome of your particular case. Advertising paid for by the law office of Martin D. Gross, APC.

| In re: CENTER COURT PARTNERS, LLC | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER 1:11-bk-13715-MT |

**Note:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

1999 Avenue of the Stars, Suite 1700
Los Angeles, California 90067

The foregoing document described as ***Montecito Bank & Trust's Objection To Application Of Debtor Approving Employment Of Attorney [Rocky Ortega]; Joinder In Objection By United States Trustee; Reservation Of Rights; And Declaration Of Ashleigh A. Danker In Support Thereof*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

☒ **I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **July 6, 2011**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

☐ **II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL(indicate method for each person or entity served):**
On **July 6, 2011**, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

☐ **III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to Fed. R. Civ. Proc. 5 and/or controlling LBR, on _____, 2011 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_July 6, 2011_  _Shahnaz Virani_  _/s/ Shahnaz Virani_
Date            Type Name                Signature

8

60222499_6.DOCX

**In re Center Court Partners, LLC**
**U.S.B.C., Central District of California, San Fernando Valley Division**
**Case No. 1:11-bk-13715-MT**

## I. SERVED ELECTRONICALLY VIA NEF:

- Katherine Bunker     kate.bunker@usdoj.gov
- Melissa J Fassett    mjf@ppplaw.com
- Martin D Gross       martin@lawgross.com
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov

## II. SERVED VIA REGULAR MAIL:

<u>Honorable Maureen A. Tighe</u>
U.S. Bankruptcy Court
21041 Burbank Blvd., Suite #325
Woodland Hills, CA 91367

## III. SERVED VIA OVERNIGHT MAIL:

<u>Proposed Debtor's Counsel:</u>
Rocky Ortega, Esq.
405 El Camino Real, Ste. 320
Menlo Park, CA 94025

Law Offices of Rocky Ortega
29134 Roadside Dr, Ste 107
Agoura Hills, CA 91301

60222499_6.DOCX