1  Ashleigh A. Danker (Bar Number 138419)
   Email address: adanker@kayescholer.com
2  KAYE SCHOLER LLP
   1999 Avenue of the Stars, Suite 1700
3  Los Angeles, California 90067
   Telephone: (310) 788-1000
4  Facsimile: (310) 788-1200

5  Attorneys for Secured Creditor
   Montecito Bank & Trust

6
                    UNITED STATES BANKRUPTCY COURT
7
                    CENTRAL DISTRICT OF CALIFORNIA
8
                    SAN FERNANDO VALLEY DIVISION
9
   In re                          )  Case No. 01:11-bk-13715-MT
10                                 )
   CENTER COURT PARTNERS, LLC,     )  Chapter 11
11 Debtor and Debtor-in-Possession )
                                   )
12                                 )  NOTICE OF MOTION AND MOTION BY
                                   )  MONTECITO BANK & TRUST TO DISMISS
13                                 )  BANKRUPTCY CASE; MEMORANDUM OF
                                   )  POINTS AND AUTHORITIES;
14                                 )  DECLARATIONS OF MICHAEL E.
                                   )  JARRELLS AND ASHLEIGH A. DANKER
15                                 )  IN SUPPORT THEREOF
                                   )
16                                 )
                                   )
17                                 )  Date:    September 15, 2011
                                   )  Time:    1:00 p.m.
18                                 )  Place:   Courtroom 302
                                   )          United States Bankruptcy Court
19                                 )          21041 Burbank Blvd.
                                   )          Woodland Hills, CA 91367
20 ─────────────────────────────

21

22

23

24

25

26

27

28

60319707

**TO THE HONORABLE MAUREEN A. TIGHE, UNITED STATES BANKRUPTCY JUDGE, THE DEBTOR, THE OFFICE OF THE UNITED STATES TRUSTEE, AND OTHER PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that on September 15, 2011 at 1:00 p.m. or as soon thereafter as counsel may be heard by the Honorable Maureen A. Tighe, United States Bankruptcy Judge, in Courtroom 302 located at 21041 Burbank Blvd., Woodland Hills, California 91367, secured creditor Montecito Bank & Trust ("Montecito" or the "Bank") in the above-captioned bankruptcy case shall move, and hereby does move, the Court for an Order dismissing this bankruptcy case, barring the Debtor from re-filing for a period of 180 days, remanding the Van Nuys Action (1:11-ap-1384-MT) back to state court, directing the Debtor to immediately turn over to the Bank all cash collateral for application to the balance owed to the Bank, and directing the Debtor to immediately turn over to the Bank copies of all of its book and records related to its ownership, development, operation, marketing, sales, and leasing of the Property (the "Motion").

The grounds for the Motion are that (i) the Debtor is unable to obtain financing sufficient to satisfy the Bank's secured claim in full, (ii) the Debtor has failed to file an amended plan of reorganization and disclosure statement on or before August 18, 2011 as ordered by the Court at the continued status conference on June 28, 2011 and has no reasonable likelihood of confirming a plan within a reasonable period of time, and (iii) the Debtor is a single asset real estate entity with few non-insider creditors that filed this bankruptcy case on the eve of foreclosure in bad faith solely for benefit of the Debtor's principal and guarantor, Roger W. Meyer.

The Motion is brought pursuant to 11 U.S.C. § 1112(b) and is based upon this Notice, the attached Memorandum of Points and Authorities, the attached declarations of Michael E. Jarrells and Ashleigh A. Danker, the attached exhibits, the previously filed declaration of Michael E. Jarrells (Docket No. 39), the record of this case, the arguments of counsel for the Bank at the hearing in support of the Motion, and such other pleadings and evidence in support of the Motion as may be presented at or before the hearing on the Motion.

///

60319707                                  1

**PLEASE TAKE FURTHER NOTICE** that if you do not oppose the Motion, you need take no further action.  If you do oppose the Motion, Local Bankruptcy Rule 9013-1(f) requires that any response to the Motion be filed with the Court and served not less than fourteen (14) days before the date designated for hearing upon (i) counsel for the Bank at the address given in the upper left corner of the first page of this Notice and (ii) the United States Trustee.  Pursuant to Local Bankruptcy Rule 9013-1(h), the failure to file and serve a timely opposition to the Motion may be deemed by the Court to constitute consent to the Court's granting the relief sought therein.

**WHEREFORE,** the Bank respectfully requests that the Court grant the Motion and such other and further relief as the Court deems just and proper.

Dated: August 25, 2011

Respectfully submitted,
KAYE SCHOLER LLP
Ashleigh A. Danker


By: _____
    Ashleigh A. Danker
    Attorneys for Secured Creditor,
    Montecito Bank & Trust

KAYE SCHOLER LLP

60319707

2

# TABLE OF CONTENTS

I.    INTRODUCTION .......................................................................................... 1

II.   STATEMENT OF FACTS ........................................................................... 2

    A.    The Debtor Has Failed to Refinance the Property in the Two and One-Half
    Years Since the Original Maturity Date of the Loan and No Longer Seeks to
    Confirm a Plan of Reorganization ...................................................... 2

        (1)    The Debtor Failed to Refinance the Property For Two Years Prior to
        the Petition Date ........................................................... 2

        (2)    The Debtor Failed to Propose an Amended Plan By the Court's
        Deadline of August 18, 2011 and its Alleged Postpetition Financing
        is Pure Speculation ...................................................... 4

    B.    The Bankruptcy Case Was Filed Exclusively for the Benefit of the Debtor's
    Principal and Guarantor, Roger Meyer ............................................... 5

    C.    The Debtor is a Single-Asset Entity with Few Non-Insider Creditors ............... 6

III.  ARGUMENT ............................................................................................. 8

    A.    Cause to Dismiss Exists under Section 1112(b)(4)(A) ............................ 10

    B.    Cause to Dismiss Exists under Section 1112(b)(4)(J) ............................ 12

    C.    Cause to Dismiss Exists under Section 1112(b) Because the Bankruptcy
    Case was Filed in Bad Faith ............................................................ 13

IV.   CONCLUSION ........................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

C-TC 9th Ave. P'shp v. Norton Co. (In re C-TC 9th Ave. P'shp),
    113 F.3d 1304 (2d. Cir. 1997)..................................................................... 13

In re HBA East, Inc.,
    87 B.R. 248 (Bankr. E.D.N.Y. 1988) .......................................................... 13

In re Johnston,
    149 B.R. 158 (9th Cir. BAP 1992).............................................................. 11

In re Reagan,
    403 B.R. 614 (B.A.P. 8th Cir.2009),
    aff'd, 374 F. App'x 683 (8th Cir. 2010) ...................................................... 9

In re Squires Motel, LLC,
    416 B.R. 45 (Bankr. N.D.N.Y. 2009) .......................................................... 9

In re Wallace,
    2010 Bankr. LEXIS 261 (Bankr. D. Idaho 2010) ........................................ 11

Loop Corp. v. U.S. Trustee,
    379 F.3d 511 (8th Cir. 2004) ...................................................................... 10

Marsch v. Marsch (In re Marsch),
    36 F.3d 825 (9th Cir. 1994) ........................................................................ 13

Pioneer Liquidating Corp. v. U.S. Trustee (In re Consol. Pioneer Mortgage Entities),
    248 B.R. 368 (9th Cir. BAP 2000).............................................................. 13

Rand v. Porsche Financial Services, Inc. (In re Rand),
    2010 WL 6259960 (9th Cir. BAP 2010) ........................................... 10, 11, 13

Schubert v. Lucent Technologies, Inc. (In re Winstar Communications, Inc.),
    554 F.3d 382 (3d Cir. 2009) ........................................................................ 7

Squires Motel,
    416 B.R. at 49 .............................................................................................. 13

**Statutes**

11 U.S.C. § 1112 ................................................................................................. 8

11 U.S.C. § 1112(b) ........................................................................................ 1, 9

11 U.S.C. § 1112(b)(1) ....................................................................................... 10

11 U.S.C. § 1112(b)(2)(A) ................................................................................... 9

11 U.S.C. § 1112(b)(2)(B) ................................................................................... 9

11 U.S.C. § 1112(b)(4) .................................................................................... 9, 13

11 U.S.C. § 1112(b)(4)(A) ............................................................................ 10, 11

11 U.S.C. § 1112(b)(4)(J) ................................................................................... 12

11 U.S.C. § 1126(c) ............................................................................................ 12

11 U.S.C. § 1129(a)(10) ................................................................................ 11, 12

11 U.S.C. § 1129(b)(2)(A) ................................................................................... 5

Local Bankruptcy Rule 9013-1(a)(11) .................................................................. 2

Local Bankruptcy Rule 9013-1(a)(7) .................................................................... 1

KAYE SCHOLER LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

60319707

**Other Authorities**

7 Alan N. Resnik,
    Collier on Bankruptcy § 1112.04[5] (16th Ed. 2011) .......................................................... 9

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Montecito Bank & Trust ("Montecito" or the "Bank") is a secured creditor -- and the primary non-insider creditor -- of debtor in possession Center Court Partners, LLC (the "Debtor"). As of September 15, 2011, the Bank will be owed approximately $10,325,164.03, including principal of $9 million, interest, professionals' fees, and other costs. A copy of the Bank's Loan Payoff Statement (the "Loan Payoff") is attached hereto as **Exhibit A.**[1]

The Debtor commenced the above-captioned bankruptcy case on Friday, March 25, 2011 (the "Petition Date") -- the same day that the Van Nuys Court (defined below) denied the Debtor's motion for a preliminary injunction to stay the Bank from proceeding with a foreclosure sale of the Debtor's primary asset, a 22-unit medical condominium building in Agoura Hills, California (the "Property"), scheduled for Monday, March 28, 2011. Now, two and one-half years after the original maturity date of the Bank's loan (February 25, 2009) and nearly six (6) months after the Petition Date, the Debtor is unable to secure financing sufficient to pay the Bank in full and has failed to file by August 18, 2011 -- the deadline set by the Court -- a plan of reorganization with a reasonable likelihood of being confirmed. Moreover, as events in this case have demonstrated, it is clear that this case was filed in bad faith for the benefit of the Debtor's principal, Roger W. Meyer ("Meyer"), the personal guarantor of the Bank's loan.

///

///

---

[1] This amount includes principal, interest, and certain fees and costs through September 15, 2011. It also includes actual legal fees and costs incurred through July 31, 2011 and an estimate for legal fees and costs anticipated to be incurred during the period from August 1 - September 15, 2011. Credit has been given for the adequate protection payments received for July and August 2011. Because of, among other things, the estimated legal fees and costs, the final amount owed to the Bank through September 15, 2011 is subject to change depending on the actual amounts incurred and any actual payoff amount should be verified with the Bank prior to any attempted payoff. Additional interest, fees, and costs, including legal fees and costs, shall continue to accrue after September 15, 2011 if the Loan is not paid off on or before that date.

60319707

1

## II.

## STATEMENT OF FACTS

**A.**    **The Debtor Has Failed to Refinance the Property in the Two and One-Half**
**Years Since the Original Maturity Date of the Loan and No Longer Seeks to**
**Confirm a Plan of Reorganization**

**(1)**    **The Debtor Failed to Refinance the Property For Two Years Prior to**
**the Petition Date**

On August 7, 2007, the Bank extended the Debtor a loan in the original principal amount
of $10,000,000 (the "Loan").  A description of the Loan, along with supporting documentation, is
attached to the *Declaration of Michael Jarrells in Support of Montecito Bank & Trust's*
*Oppositions and Objections to Debtor's: (1) Motion for Use of Cash Collateral, (2) Notice of*
*Setting/Increasing Insider Compensation of JRM Equities, Inc., and (3) Second Case Status*
*Conference Report* (Docket No. 39, the "Jarrells I Decl.").[2]  The building constructed on the
Property was completed in 2008 and the Loan was originally set to mature two and one-half
years ago on February 25, 2009 (the "Original Maturity Date").  Because the Debtor was unable
to pay the Loan on the Original Maturity Date, by agreement with the Bank, the maturity of the
Loan was extended five (5) times ultimately to April 25, 2010 (the "Extended Maturity Date").
When the Debtor was unable to pay the Loan on the Extended Maturity Date, on or about May 4,
2010, the Bank declared the Loan in default.  Thereafter, the Debtor and the Bank entered into
two forbearance agreements.  The first forbearance agreement expired on July 15, 2010 (the
"First Forbearance") and the second forbearance agreement expired on September 27, 2010 (the
"Second Forbearance").  *See* Jarrells I Decl., ¶¶ 3-17 and Exhibits A-M thereto.

On September 29, 2010, following expiration of the Second Forbearance, the Bank
recorded a Notice of Default and Election to Sell  Under Deed of Trust (the "NOD") with respect
to the Property.  The three-month reinstatement period expired on December 29, 2010.  On

---

[2]    The Court is requested to take judicial notice of the Jarrells I Declaration, which is
incorporated herein by reference.

KAYE SCHOLER LLP

January 7, 2011, the Bank caused a Notice of Trustee's Sale (the "Sale Notice") to be issued,
recorded, and published on January 13, 20, and 27, 2011. The Sale Notice scheduled a
foreclosure sale of the Property for February 2, 2011. *See* Declaration Michael E. Jarrells
("Jarrells II Decl."), attached hereto, ¶4 and **Exhibits B** and **C,** NOD, Sale Notice and proof of
publication.

With the Bank's foreclosure sale approaching on February 2, 2011, on January 28, 2011,
the Debtor filed an *ex parte* application for a preliminary injunction in the Van Nuys East
Division of the Los Angeles Superior Court (the "Van Nuys Court"). The filing of the *ex parte*
application, without an accompanying complaint, commenced a special proceeding, Case No.
LS021121, in the Van Nuys Court. An *ex parte* order temporarily restraining the foreclosure sale
was entered the same day and a further hearing was set for February 15, 2011. *See* Jarrells II
Decl., ¶ 5.

On February 14, 2011, the Debtor filed its complaint against the Bank, commencing Case
No. LC092694, which was consolidated with Case No. LS021121 and is referred to herein
collectively with Case No. LS021121 as the "Van Nuys Action." In reply to the Bank's
opposition to the preliminary injunction application, the Debtor belatedly raised a series of new
arguments. To allow further briefing, the Van Nuys Court continued the hearing on the
injunction to Friday, March 25, 2011 and extended the temporary stay to the same date. *See*
Jarrells II Decl., ¶ 6. At the March 25th hearing, the Court denied the Debtor's application for a
preliminary injunction, finding no showing that the Debtor was likely to succeed on the merits.
*See* Jarrells II Decl., **Exhibit D,** Superior Court Minute Order denying preliminary injunction and
lifting restraining order.

With the Bank's foreclosure sale then scheduled for Monday, March 28, 2011, the Debtor
filed its bankruptcy petition on the afternoon of March 25, 2011. The Debtor removed the Van
Nuys Action to this Court on May 23, 2011, where it is now pending as Adversary Proceeding
No. 1:11-ap-01384-MT.

///

**(2)** **The Debtor Failed to Propose an Amended Plan By the Court's
Deadline of August 18, 2011 and its Alleged Postpetition Financing is Pure
Speculation**

On June 20, 2011, the Debtor filed its *Chapter 11 Plan* (Docket No. 40, the "Plan") and
*(1) Original Disclosure Statement Describing (2) Original Chapter 11 Plan* (Docket No. 41, the
"Disclosure Statement" and, collectively with the Plan, the "Plan Documents"). In the Plan
Documents, the Debtor asserted that the Bank was owed at least $9,395,093.75, including certain
postpetition arrearages as of an unspecified date. The Debtor also valued the Property at
$10,775,000 on an "as-is" basis and $25,000,000 assuming, among other things, additional
potential improvements, which the Bank believes are in the early stages of regulatory approval
and permitting, are completed. *See* Section II.C.1 of the Plan and Section III.C.1 of the
Disclosure Statement, copies of which are attached hereto as **Exhibits E** and **F.** Nowhere in the
Plan Documents or elsewhere did the Debtor dispute the validity of its obligation to the Bank or
that the Bank holds a valid, perfected, first priority, unavoidable lien against the Property. As set
forth in the Loan Payoff Statement, the Bank is owed approximately $10,325,164.03 as of
September 15, 2011 -- more than the amount acknowledged by the Debtor in June 2011, but less
than the Debtor's estimate of the "as-is" value of the Property.

The Plan Documents described an audacious scheme by the Debtor to force the Bank to
accept a discounted payoff (87% using the Debtor's figures and 76% using the figures in the
Loan Payoff Statement) notwithstanding the Debtor's assertion that the Bank was oversecured.
The Plan Documents proposed that the Bank would be stripped of its lien so that the Debtor
could obtain first priority lien financing from Preferred Bank in the amount of $12 million and
equity financing from City Lights Financial Express, Inc. ("City Lights") in the amount of
$2,100,000. The proceeds of the financing were to be used to fund the discounted payoff to the
Bank, certain other Plan payments, and improvements to the Property costing approximately
$6,000,000. After completion of the improvements, the Debtor estimated that the Property would
be worth $25,000,000. In short, the Debtor improperly sought to use the leverage that it gained

through its bankruptcy filing and the plan process to force the Bank to realize less than the Debtor's estimated value of the Bank's collateral in violation Section 1129(b)(2)(A) so that the Debtor's equity holders (which currently consist of Meyer and his wife) could reap windfall profits after the Property was re-entitled.

At the conclusion of the case status conference on June 28, 2011, the Court determined, among other things, that the Plan did not have a reasonable likelihood of being confirmed within a reasonable period of time. As a threshold matter, the Court noted that the Plan failed to provide for payment in full to the Bank despite the Debtor's assertion that the Bank was oversecured. The Court also noted that the Debtor had not taken appropriate steps to obtain approval of the two tranches of financing required under the Plan. As a result, the Court set August 18, 2011 as the deadline for the Debtor to file an amended plan and disclosure statement and August 24, 2011 to file any related financing motions. The Court also reserved September 15, 2011 for hearings on the amended disclosure statement and financing motions and set a continued case status conference for the same date. *See* Declaration of Ashleigh A. Danker ("Danker Decl."), attached hereto, ¶ 3.

On August 15, 2011, counsel for the Debtor, Martin Gross, sent counsel for the Bank, Ashleigh Danker, an email acknowledging that it was no longer the Debtor's intention to seek confirmation of a plan. *See* **Exhibit G.** Consistent with this email, the Debtor failed to file an amended plan of reorganization by August 18, 2011 as ordered by the Court. The Debtor also failed to file any financing motions by August 24, 2011 as ordered by the Court.

## B.    The Bankruptcy Case Was Filed Exclusively for the Benefit of the Debtor's Principal and Guarantor, Roger Meyer

The Debtor filed its bankruptcy case on the eve of the Bank's foreclosure sale, successfully invoking the automatic stay to prevent the foreclosure sale. Thereafter, as described above, the Debtor filed an unconfirmable plan improperly seeking to benefit the Debtor's principal, Roger Meyer, at the expense of the Bank.

The bankruptcy case was also improperly used to benefit Meyer in the Bank's action against him on his personal guaranty of the Loan. In particular, while the Bank was pursuing its prepetition remedies against the Debtor, it also began pursuing them against Meyer personally. On October 28, 2010, the Bank commenced Case No. 137409 in the Santa Barbara County Superior Court (the "Santa Barbara Action") against Meyer for breach of contract in connection with his failure to honor the Guaranty. On March 25, 2011 -- the same day that the Debtor commenced this case -- the Bank obtained a prejudgment attachment against Meyer partially secured by $324,000 held in a Wealth Management Account maintained at the Bank belonging to Meyer. Copies of the Guaranty, Attachment Order, Undertaking, and Writ of Attachment are attached to the Jarrells I Declaration as Exhibits F, O, P and Q, respectively.

On May 23, 2011, the Debtor removed the Santa Barbara Action to this Court -- notwithstanding that the Debtor is not a party to that action. In filing this meritless removal, the Debtor caused the hearing on the Bank's motion for summary judgment against Meyer, set for hearing on July 25, 2011, to be taken off calendar. On July 28, 2011, the Court entered an Order remanding the Santa Barbara Action back to the Santa Barbara Court. A new hearing date on the summary judgment motion has not yet been set. Danker Decl., ¶ 5. Thus, the improper removal rewarded Meyer with a substantial delay in the Santa Barbara Action on the summary judgment motion.

## C.    The Debtor is a Single-Asset Entity with Few Non-Insider Creditors

As acknowledged by the Debtor, the Debtor is a single-asset real estate entity owned by Meyer, the Managing Member, and his wife, Karen Meyer.[3] Although the building on the

---

[3]    *See List of Equity Security Holders* included with the Debtor's amended *Petition, Schedules, and Statement of Financial Affairs* (collectively, the "Schedules") filed on April 8, 2011, Docket No. 8, a copy of which is attached hereto as **Exhibit H;** *see also Debtor's 2nd Case Status Conference Report, Declaration of Roger Meyer* (Docket No. 31, the "Second Status Report"), p. 2, lines 13-15, and p. 4, lines 11-12, filed on June 9, 2011, a copy of which is attached hereto as **Exhibit I.**

KAYE SCHOLER LLP

Property was completed in 2008, only two of the tenant spaces are currently leased.[4]  According

to Schedules D and E of the Debtor's Schedules, the Bank is the Debtor's only secured creditor

and the L.A. County Tax Collector (the "Tax Collector") is the only holder of an unsecured

priority claim.[5]  Although the Debtor scheduled the Tax Collector as being owed $72,000, on

August 1, 2011, the Tax Collector filed a proof of claim, Claim No. 4, in the amount of

$239,684.11.

According to Schedule F, the Debtor has the following four (4) general unsecured

creditors, only one (1) of which is not an insider:

- City Lights Financial Express ("City Lights") ($148,000, unpaid lease
  commissions) - as disclosed in the Plan, City Lights seeks to purchase 50% of the
  Debtor's equity through the Plan. In September 2010, Joseph Miller, a principal
  of City Lights, entered into an agreement with the Meyers to purchase 50% of the
  Debtor's equity - an agreement which he appears to have breached without the
  Meyers seeking to pursue any remedies against him. Mr. Miller has attended the
  Section 341(a) meeting of creditors and every hearing in the case to date,
  including trying to offer testimony regarding the Debtor's reorganization effort
  and attempts to secure financing. *See* Danker Decl., ¶ 6 and **Exhibit J** (Asset
  Purchase Agreement). Based upon the undoubted influence, closeness, and
  control that Mr. Miller and City Lights have with respect to the Debtor and its
  reorganization, City Lights is an insider of the Debtor.[6]

---

[4]  *See* Schedule G of the Schedules, a copy of which is attached hereto as **Exhibit H;** *see also*
Second Status Report, **Exhibit I**, p. 4, lines 14-15.

[5]  Copies of Schedules D, E, and F are attached hereto as **Exhibit H.**

[6]  *See Schubert v. Lucent Technologies, Inc. (In re Winstar Communications, Inc.),* 554 F.3d 382
(3d Cir. 2009) (non-arms'-length relationship between debtor and creditor rendered creditor a
non-statutory insider for purposes of Bankruptcy Code).

- <u>Johnson Mueller Architects ("JMA") ($65,000, architectural services)</u> - the Bank is currently unaware of any facts that would make this creditor an insider.

- <u>Opel Meyer Survivor's Trust (the "Trust") ($1,400,000, loan July 2009- Oct. 2010)</u> - Meyer is a co-trustee and beneficiary of the Trust. A copy of The William and Opal Merle Meyer Family Trust is attached hereto as **Exhibit K.** Accordingly, the Trust is an insider of the Debtor.

- <u>Roger Meyer ($4,600,000, loan July 2006-Sept. 2010)</u> - As noted above, Meyer is the Managing Member of the Debtor and owns the equity with his wife. Accordingly, he is an insider.

Thus, the Debtor appears to have only two (2) non-insider creditors besides the Bank: the Tax Collector and JMA (the architect), neither of which is owed nearly as much as the Bank.

### III.

### <u>ARGUMENT</u>

### <u>Dismissal of the Case is Required under Section 1112(b) of the Bankruptcy Code</u>

Section 1112 of the Bankruptcy Code governs conversion or dismissal of Chapter 11 cases. It provides in pertinent part:

> (b)(1) Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court **shall** convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

> (2) The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that—

> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121 (e) and 1129 (e)

of this title, or if such sections do not apply, within a reasonable period of time; and

(B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)—

(i) for which there exists a reasonable justification for the act or omission; and

(ii) that will be cured within a reasonable period of time fixed by the court.

\*\*\*

(4) For purposes of this subsection, the term "cause" *includes*—

(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;

\*\*\*

(J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court;

[emphasis added.]

Prior to its amendment by BAPCPA in 2005, Section 1112(b) permitted the bankruptcy court discretion to decide whether to convert or dismiss a case, even if the movant had established cause. As a result of the amendment, conversion or dismissal of a case is *required* if the movant shows cause unless the bankruptcy court specifically identifies "unusual circumstances" establishing that conversion or dismissal is not in the best interests of creditors and the estate and other factors specified in Sections 1112(b)(2)(A) and (B) are satisfied. The movant bears the burden of establishing by a preponderance of the evidence that cause exists either to dismiss or convert the case. *In re Squires Motel, LLC*, 416 B.R. 45, 50 (Bankr. N.D.N.Y. 2009). Once cause is established, the burden shifts to the opposing party. One ground, however, is sufficient, standing alone, to establish cause under the statute. *In re Reagan,* 403 B.R. 614 (B.A.P. 8th Cir.2009), *aff'd,* 374 F. App'x 683 (8th Cir. 2010); 7 Alan N. Resnik, Collier on Bankruptcy § 1112.04[5] (16th Ed. 2011) ("[i]f one of the enumerated examples of cause set forth in Section 1112(b)(4) is proven by the movant by a preponderance of the evidence, the court must find that [the] movant has established cause").

## A.    Cause to Dismiss Exists under Section 1112(b)(4)(A)

Pursuant to Section 1112(b)(4)(A), cause to dismiss or convert exists when there is a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." This Section effectuates the purpose of Section 1112(b)(1), which is "to preserve estate assets by preventing the debtor in possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation." *Rand v. Porsche Financial Services, Inc. (In re Rand)*, 2010 WL 6259960, *4 (9th Cir. BAP 2010), citing *Loop Corp. v. U.S. Trustee,* 379 F.3d 511, 516 (8th Cir. 2004).

To determine whether there is continuing loss to or diminution of the estate, the bankruptcy court must look beyond financial statements and fully evaluate the present condition of a debtor's estate. *Rand* at *4, (citations omitted). Here, the Debtor has virtually no cash flow and is using the bankruptcy case to run up the Bank's expenses in an effort to leverage the Bank into accepting a discounted payoff of the Loan. As acknowledged in the Disclosure Statement (p. 11), the Property is at least 89% vacant and operates at a monthly loss. The Debtor's two tenants pay monthly rents totaling approximately $10,460.01 (the "Monthly Rents"), which rents are the Bank's cash collateral.

Pursuant to the Court's order authorizing use of cash collateral, Docket No. 51, the Debtor is authorized to use $2,983.50 of the Monthly Rents to pay certain pre-approved expenses to maintain the Property and is required to segregate the balance. The remaining expenses of the estate, including the monthly adequate protection payments to the Bank of non-default rate interest of approximately $45,000, the fees of the Debtor's counsel, and other amounts the Debtor desires to spend in connection with the Property are either (i) funded by monthly capital infusions from Meyer or (ii) unpaid. In addition, the Debtor has asserted that the Bank is oversecured. In such a situation, then the Bank is entitled to received interest at the default rate under its Note, rather than the non-default rate (11.875% v. 5.875%). Since the Debtor is only paying adequate protection payments at the non-default rate, the Debtor is increasing its secured obligation to the

KAYE SCHOLER LLP

1  Bank by approximately $46,500 per month for interest alone, excluding the Bank's ongoing legal

2  fees and other costs, which are also increasing the balance owed.

3       The issue of rehabilitation for purposes of Section 1112(b)(4)(A) "is not a technical one

4  of whether the debtor can confirm a plan, but, rather, whether the debtor's business prospects

5  justify continuation of the reorganization effort." *Id.,* quoting *In re Wallace,* 2010 Bankr. LEXIS

6  261, *13-14 (Bankr. D. Idaho 2010). A chapter 11 case may be dismissed, even at its outset,

7  where reorganization is unrealistic or futile. *Rand,* at *5, citing *In re Johnston,* 149 B.R. 158,

8  162 (9th Cir. BAP 1992). Here, the Debtor has been unable to refinance the Property for two and

9  one-half years. Moreover, the Plan depended on the Debtor taking the legally inconsistent

10  positions that the Bank was both oversecured -- because the Property needed to have a high value

11  to qualify for the Debtor's proposed new financing  --- and could be forced to accept a discounted

12  payoff -- because the Debtor needed to use part of new financing to pay for the proposed

13  improvements to the Property. Unfortunately for the Debtor and Guarantor, there was simply not

14  enough money in the Plan financing -- assuming that such financing ever came to fruition which

15  is not clear as all the Debtor has provided was a letter of intent subject to conditions cannot

16  currently be satisfied and for which no financing motion has been filed even though the Court

17  ordered such a filing -- to enable the Debtor to do what it wanted to do. On the one hand, if the

18  Bank is oversecured, then the Debtor cannot confirm a plan over the Bank's objection without

19  paying the Bank in full. On the other hand, if the Debtor pays the Bank in full, it would not have

20  enough money to fund its proposed improvements (assuming that it could even obtain the

21  entitlements for the improvements, which is doubtful especially in the required time frame).

22       Alternatively, if the Debtor were to suddenly reverse course and decide that the Property

23  is worth much less than the Bank is owed, the Bank would have a deficiency claim that it would

24  use to vote "no" in the general unsecured class. Under Section 1129(a)(10), if a class of claims is

25  impaired under the plan, then the plan cannot be confirmed unless at least one class of impaired

26  claim, <u>determined without including any acceptances by insiders</u>, accepts the plan. A plan is

27  accepted when creditors in that class representing at least one-half in number and two-thirds in

28

KAYE SCHOLER LLP

60319707

11

dollar amount vote in favor of the plan. 11 U.S.C. § 1126(c). As described above, the Debtor appears to have only one non-insider general unsecured claim, that of Johnson Mueller Architects, owed $65,000. Thus, so long as the Bank's deficiency claim exceeded $27,598, the Bank's "no" vote in the general unsecured class would mean that the plan would not have at least one impaired consenting class, excluding the votes of insiders. As a result, Section 1129(a)(10) could not be satisfied, and the plan could not be confirmed.

Based on the foregoing, the Debtor's estate is continuing to diminish in value and the Debtor has no reasonable likelihood of rehabilitation regardless of whether the Bank is oversecured or undersecured.[7] Therefore, cause exists to grant the Motion.

## B.    Cause to Dismiss Exists under Section 1112(b)(4)(J)

Pursuant to Section 1112(b)(4)(J), cause exists to dismiss or convert a case when the debtor has failed to file a disclosure statement within a time fixed by the Court. At the continued status conference on June 28, 2011, the Court directed the Debtor to file an amended plan of reorganization and disclosure statement by August 18, 2011 and any related financing motions by August 24, 2011, and reserved September 15, 2011 for hearings thereon. The Debtor, however, did not file an amended plan and disclosure statement as directed by the Court and has admitted that it no longer intends to try to confirm a plan. It also failed to timely file any financing motions as directed by the Court. As described above, the Debtor is a single asset real estate entity, the case is a two-party dispute, there are virtually no non-insider unsecured creditors, and the Debtor's sole asset is encumbered by the Bank's undisputed lien. The Debtor has been trying to refinance the Property for two and one-half years, including nearly six months under the protection of the Bankruptcy Court, without success. It is time to put an end to the Debtor's wishful thinking that it can refinance the Property at a level sufficient to pay off the Bank and allow the Bank, at long last, to exercise its remedies. Based on the Debtor's failure to comply

---

[7]    The Bank takes no position on the value of the Property.

1    with the Court's order to file an amended plan and disclosure statement on or before August 18,

2    2011 and related financing motions by August 24, 2011, cause exists to grant the Motion.

3    **C.**    **Cause to Dismiss Exists under Section 1112(b) Because the Bankruptcy Case was**

4    **Filed in Bad Faith**

5        The statutorily enumerated grounds in Section 1112(b)(4) are not the exclusive grounds

6    constituting "cause" for dismissal or conversion of a chapter 11 case. *Rand, supra,* 2010 WL

7    6259960, *3. The bankruptcy court has broad discretion to determine what constitutes "cause"

8    sufficient for dismissal under Section 1112(b). *Pioneer Liquidating Corp. v. U.S. Trustee (In re*

9    *Consol. Pioneer Mortgage Entities),* 248 B.R. 368, 375 (9th Cir. BAP 2000). A petition properly

10   may be dismissed if it was not filed in good faith. *Marsch v. Marsch (In re Marsch),* 36 F.3d

11   825, 828 (9th Cir. 1994); *C-TC 9th Ave. P'shp v. Norton Co. (In re C-TC 9th Ave. P'shp),* 113 F.3d

12   1304, 1312 (2d. Cir. 1997) (indicating that a finding of bad faith "requires a full examination of

13   all the circumstances of the case" and is "a highly factual determination."). Among the factors a

14   court should consider in evaluating the good faith of the debtor's bankruptcy filing are: "(1)

15   whether the filing of the petition was strategically timed to obtain a litigation advantage; (2)

16   whether the debtor's reorganization effort is essentially a two party dispute; (3) the nature and

17   extent of the debtor's assets, debts and business operations; and (4) whether there is a reasonable

18   probability that a reorganization plan can be proposed and confirmed." *Squires Motel,* 416 B.R.

19   at 49, citing *In re HBA East, Inc.,* 87 B.R. 248, 258 (Bankr. E.D.N.Y. 1988).

20       Here, the Debtor's bankruptcy case was filed the same day that the Van Nuys Court

21   denied the Debtor's motion for a preliminary injunction to stop the Bank's foreclosure, which

22   was set for the next business day. Moreover, the Debtor used the bankruptcy case to improperly

23   remove the Santa Barbara Action, which did not involve the Debtor at all, but was strictly

24   between the Bank and Meyer. As a result of the wrongful removal, Meyer gained a strategic

25   litigation advantage: *i.e.,* the Bank's summary judgment motion -- which requires a 75-day notice

26   period in state court and was scheduled for July 25, 2011 -- was taken off calendar in Santa

27   Barbara.

28

KAYE SCHOLER LLP

60319707                                          13

1    In addition, as evidenced by the Debtor's Schedules and the Plan and Disclosure

2    Statement, the Bank is the Debtor's only significant non-insider creditor. The entire focus of the

3    Debtor's bankruptcy case has been for the Debtor to gain an unfair advantage in its two party

4    dispute with the Bank. Moreover, the Debtor is a single asset real estate entity. It has no

5    employees, no operations, and little cash flow. Despite the fact that the Property was completed

6    three years ago, the Property is vacant except for two small tenants and the Debtor has been

7    unable to re-finance it for the last two and one-half years. Despite the Debtor's hopes and

8    speculation, there is no reasonable probability that a plan of reorganization can be proposed and

9    confirmed by the Debtor.

10    Based on all of the facts and circumstances surrounding the filing of the bankruptcy case,

11    the Debtor's case was filed in bad faith and, therefore, cause exists to dismiss the case.

## IV.

## CONCLUSION

For the reasons set forth above, the Bank respectfully requests the Court to dismiss the

Debtor's bankruptcy case. Dismissal, rather than conversion, is appropriate because the Debtor

has few creditors other than the Debtor, no employees, and no operations. The Bank also

requests that the Court (i) grant a 180-day bar against a re-filing by the Debtor, (ii) remand the

Van Nuys Action back to the Van Nuys Court, (iii) order the Debtor to immediately turn over to

the Bank all cash collateral for application to the balance of the Loan, (iv) order the Debtor to

immediately turn over to the Bank copies of all of its book and records related to its ownership,

development, operation, marketing, sales, and leasing of the Property, and (iv) grant such other

and further relief as is just and proper under the circumstances.

Dated: August 25, 2011                    KAYE SCHOLER LLP
                                          Ashleigh A. Danker

                                          By: _____
                                          Ashleigh A. Danker
                                          Attorneys for Secured Creditor,
                                          Montecito Bank & Trust

60319707                                  14

## DECLARATION OF MICHAEL E. JARRELLS

I, Michael E. Jarrells, declare and state that:

1.      I am employed by Montecito Bank & Trust ("the Bank"), the secured creditor in the above-captioned bankruptcy case, as Vice President/ Credit Administrator, and have been working with debtor-in-possession Center Court (sic) Partners, LLC (the "Debtor") with regard to the repayment of the outstanding business loan on which the Debtor's secured obligation to the Bank is based.  As such, I have personal knowledge of the matters set forth herein, except for those matters stated upon information and belief, and as to them, I believe them to be true.  If called upon to testify hereto, I could and would do so competently.  Capitalized terms not otherwise defined herein have the same meanings ascribed to them in the pleading to which this declaration is attached.

2.      I have access to the Bank's files related to the Loan, including all of the Loan documents, and am familiar with the manner in which those files have been created and maintained by the Bank.  I am able to confirm that the documents attached hereto as Exhibits are true and accurate copies of the documents which were maintained by the Bank in the ordinary course of its business in the loan files for the Debtor.

3.      Attached hereto as **Exhibit A** is the Bank's estimated Loan Payoff Statement in the amount of $10,325,164.03 as of September 15, 2011, which I prepared with input from the Bank's attorneys regarding their estimated legal fees for the period August 1, 2011 - September 15, 2011. The estimated payoff amount includes principal, interest, and certain fees and costs through September 15, 2011.  It also includes actual legal fees and costs incurred through July 31, 2011 and an estimate for legal fees and costs anticipated to be incurred during the period from August 1 - September 15, 2011.  Credit has been given for the adequate protection payments received for July and August 2011.  Because of, among other things, the estimated legal fees and costs, the final amount owed to the Bank through September 15, 2011 is subject to change depending on the actual amounts incurred and any actual payoff amount should be verified with the Bank prior to

any attempted payoff.  Additional interest, fees, and costs, including legal fees and costs, shall

continue to accrue after September 15, 2011 if the Loan is not paid off on or before that date.

4.       On September 29, 2010, following expiration of the Second Forbearance, the Bank

recorded a Notice of Default and Election to Sell  Under Deed of Trust (the "NOD") with respect

to the Property.  The three-month reinstatement period expired on December 29, 2010.  On

January 7, 2011, the Bank caused a Notice of Trustee's Sale (the "Sale Notice") to be issued,

recorded, and published on January 13, 20, and 27, 2011.  The Sale Notice scheduled a foreclosure

sale of the Property for February 2, 2011.  Copies of the NOD and Sale Notice, with proof of

publication, are attached hereto as **Exhibit B** and **C.**

5.       With the Bank's foreclosure sale approaching on February 2, 2011, on January 28,

2011, the Debtor filed an *ex parte* application for a preliminary injunction in the Van Nuys East

Division of the Los Angeles Superior Court (the "Van Nuys Court").  The filing of the *ex parte*

application, without an accompanying complaint, commenced a special proceeding, Case No.

LS021121, in the Van Nuys Court.  An *ex parte* order temporarily restraining the foreclosure sale

was entered the same day and a further hearing was set for February 15, 2011.

6.       On February 14, 2011, the Debtor filed its complaint against the Bank, commencing

Case No. LC092694, which was consolidated with Case No. LS021121 and is referred to herein

collectively with Case No. LS021121 as the "Van Nuys Action."  In reply to the Bank's opposition

to the preliminary injunction application, the Debtor belatedly raised a series of new arguments.

To allow further briefing, the Van Nuys Court continued the hearing on the injunction to Friday,

March 25, 2011 and extended the temporary stay to the same date.  At the March 25th hearing, the

Court denied the Debtor's application for a preliminary injunction, finding no showing that the

///

///

///

Debtor was likely to succeed on the merits. A copy of the Superior Court Minute Order denying

the Debtor's request for a preliminary injunction and lifting the restraining order is attached

hereto as **Exhibit D**.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Dated: August _25_, 2011

Michael E. Jarrells

## DECLARATION OF ASHLEIGH A. DANKER

I, Ashleigh A. Danker, declare as follows:

1.      I am a bankruptcy counsel at Kaye Scholer LLP ("Kaye Scholer"), counsel to secured creditor Montecito Bank & Trust (the "Bank"). I am one of the attorneys at Kaye Scholer with primary responsibility for the representation of the Bank. I have personal knowledge of the facts in this declaration and, if called as a witness, I could and would testify competently thereto. Capitalized terms not otherwise defined herein have the same meanings ascribed to them in the motion to which this declaration is attached.

2.      Attached hereto as **Exhibit E** and **Exhibit F** are copies of the *Chapter 11 Plan* (Docket No. 40, the "Plan") and *(1) Original Disclosure Statement Describing (2) Original Chapter 11 Plan* (Docket No. 41, the "Disclosure Statement" and, collectively with the Plan, the "Plan Documents") filed by the Debtor on June 20, 2011.

3.      I attended the case status conference in this case which commenced on June 23, 2011 and concluded on June 28, 2011. At the conclusion of the case status conference on June 28, 2011, the Court determined, among other things, that the Plan did not have a reasonable likelihood of being confirmed within a reasonable period of time. As a threshold matter, the Court noted that the Plan failed to provide for payment in full to the Bank despite the Debtor's assertion that the Bank was oversecured. The Court also noted that the Debtor had not taken appropriate steps to obtain approval of the two tranches of financing required under the Plan. As a result, the Court set August 18, 2011 as the deadline for the Debtor to file an amended plan and disclosure statement and August 24, 2011 to file any related financing motions. The Court also reserved September 15, 2011 for hearings on the amended disclosure statement and financing motions and set a continued case status conference for the same date.

///

///

///

60319707

18

4.    On August 15, 2011, counsel for the Debtor, Martin Gross, sent me an email acknowledging that it was no longer the Debtor's intention to seek confirmation of a plan. A copy of Mr. Gross's email to me is attached hereto as **Exhibit G.**

5.    On May 23, 2011, the Debtor removed the Santa Barbara Action to this Court -- notwithstanding that the Debtor is not a party to that action. In filing this meritless removal, the Debtor caused the hearing on the Bank's motion for summary judgment against Meyer, set for hearing on July 25, 2011, to be taken off calendar. On July 28, 2011, the Court entered an Order remanding the Santa Barbara Action back to Santa Barbara. A new hearing date on the summary judgment motion has not yet been set.

6.    Attached hereto as **Exhibit H** is a copy of the Debtor's Schedules filed on April 8, 2011, Docket No. 8. Attached hereto as **Exhibit I** is a copy of the *Debtor's 2nd Case Status Conference Report, Declaration of Roger Meyer* (Docket No. 31, the "Second Status Report"), filed on June 9, 2011.

7.    Attached hereto as **Exhibit J** is a copy of a fully executed Asset Purchase Agreement (the "APA") dated September 24, 2010 between Roger and Karen Meyer, on the one hand, and Joseph Miller, on the other hand, pursuant to which Mr. Miller agreed to purchase a 50% equity interest in the Debtor for $5,946,000 payable upon execution of the APA. This agreement was provided to the Bank by Roger Meyer in September 2010 and later provided by the Bank to me. Based upon the Debtor's filings in this case, it appears that Mr. Miller did not honor his purchase obligation under the APA. To the best of knowledge, neither the Meyers nor the Debtor, as a third party beneficiary, have sued Mr. Miller for breach of the APA.

8.    Attached hereto as **Exhibit K** is a copy of The William and Opal Merle Meyer Family Trust (the "Trust Agreement") as provided to me by Martin Gross, counsel for the Debtor, upon my request. Pursuant to the Amendment to the Trust Agreement date July7, 2004, Roger

///

///

///

1  Meyer became a Co-Trustee of the Trust and remains so today.  Mr. Meyer is also a beneficiary of

2  the Trust.  According to the Debtor's Schedules, during the period July 2009 - October 2010,

3  which was after the time that Mr. Meyer became Co-Trustee, the Trust loaned the Debtor

4  $1,400,000.

5       I declare under penalty of perjury under the laws of the United States of America that the

6  foregoing is true and correct.

7  Dated: August 25, 2011

8                                                            Ashleigh A. Danker